1 673
30 137

## WILLIAM PLASTERS *v.* THE STATE.

1. MURDER—CHARGE OF THE COURT.—On a trial for murder the court informed the jury that, as the counsel for the state did not claim that the killing was upon express malice, they would be instructed only on the law of implied malice; which thereupon was given in charge to them, and the accused was convicted of murder in the second degree. *Held,* that no error, and no prejudice to the accused, is apparent in the information and instructions thus given to the jury.

2. MALICE AFORETHOUGHT, charged in every indictment for murder, is either express or implied malice. See the opinion for a definition of these legal terms.

3. JUSTIFIABLE HOMICIDE.—On his trial for murder the accused justified the killing on the ground that he was an officer, having a legal warrant for the arrest of the deceased, who resisted its execution; and that, at the time of the killing, the accused had just ground to fear that his own life would be taken, or that he would suffer great bodily injury. In its instructions to the jury, with special reference to the evidence, the court below ignored the apprehensions of great bodily injury, and thereby limited the justification to the fear of death. *Held,* that the error of the instructions in this respect was not cured by another portion of the charge, which, in a general way, correctly stated the law.

4. RESISTING ARREST.—If a party whose arrest is attempted under legal process knows the purpose and official character of the officer, and the arrest be otherwise lawful, it is his duty to submit, and resistance is unjustifiable, though the officer makes no declaration of his official character or purpose.

5. GENERAL CHARACTER OF DECEASED.—In a trial for murder it was not competent for the accused to prove that the general character of the deceased for honesty was bad. Such evidence could neither explain the actions of the deceased at the time he was killed, nor show that the accused committed the homicide in self-defense, or under circumstances justifying it.

6. ARRAIGNMENT.—If the record shows that the accused pleaded not guilty, but is silent respecting an arraignment, this court, presuming that an arraignment was waived, will not reverse a judgment of conviction for want of an arraignment; but, if the record shows neither an arraignment nor a plea, such a judgment would be set aside.

APPEAL from the District Court of Robertson. Tried below before the Hon. SPENCER FORD.

The nature of this case is disclosed in the opinion of the

43

court.    Several witnesses were present when the homicide was committed, on the 14th of March, 1876.    Some of them were examined for the state and others for the defense.    All concurred in proving that the accused killed the deceased by a pistol shot, and the only discrepancies related to the conduct of the deceased at the time of the killing.

The state's witnesses testified that, with good opportunities for observing what transpired, they saw no acts of resistance or threatening gestures by the deceased, but only an attempt on his part to make his escape.    One witness for the defense, however, swore positively that the accused summoned the deceased to surrender, and that the latter instantly commenced to circle his horse and draw a pistol from his pocket, whereupon the accused fired.    Another witness for the defense. proved that he found on the person of the deceased, after he was shot, a pistol partly withdrawn from his waistband, and half cocked.

There was undisputed evidence that the accused, without his own solicitation, had been specially deputized by the sheriff of Bell county to arrest the deceased on a writ against him ; and it was also in evidence that the deceased had repeatedly stated he would die before he would be arrested, and that these declarations had been communicated to the accused before he attempted the arrest.

The opinion of the court indicates such features of the trial as are necessary to elucidate the rulings made.


.    *W. H. Hamman* and *George Clark*, for the appellant.

1st.    The charge begins with a copy of the statutory definition of murder.    Accurately speaking, there is no such offense as murder known to our law, and a finding for "murder" would not support a verdict.    *Buster* v. *The State*, 42 Texas, 315.

We have "murder in the first degree" and "murder in the second degree," and the definition given in the charge

is, standing alone, not applicable to either offense.   There are ingredients to be added to make it a proper definition of the first, and certain explanations are absolutely essential to enable the jury to understand how the definition could apply to the second, degree.   These the judge failed to give, either in connection with the definition or afterwards, but in clause 15 he withdraws from the jury the consideration of murder with express malice, and confines them to murder with implied malice, under the definition of murder as first given, which equally embraced both grades and defined neither.   In other and plainer terms, the court required the jury to pass upon the question of murder in the second degree, or murder with implied malice, without ever telling them what it took to constitute it, and leaving them to wrestle with a string of words that defined no offense known to the law.

This error is magnified in clause 15 by a failure of the court, not only to define murder in the second degree, but also by leaving the jury entirely in the dark as to the legal signification of the word "malice," which is a term purely technical, and not understood by the unlearned mind.  *Smith* v. *The State*, Galveston term, 1877 ; *Villareal* v. *The State*, 26 Texas, 107.

2d.  In the 2d paragraph the court tells the jury that, if the evidence does not satisfy them that appellant shot Parker, this would end their duty.   The error in this would be a small one, but was no less material.   This being the *corpus delicti*, could not the court, with great propriety, have stated the law accurately, and told the jury that the evidence must not only satisfy them of the fact, but satisfy them beyond a reasonable doubt?   We merely call attention to this omission because it is in thorough accord and keeping with the whole charge, and serves to show the seeming *animus* of the trial.

3d.  In paragraph 3 the jury are told that, if they believe

from the evidence that appellant killed Parker "in the necessary defense of his own person, or to prevent Parker from murdering him, or some one else, then such killing would be lawful," etc.   We had thought that at this day no court could be found that would attempt to restrict the law of self-defense to absolute necessity, and leave out of view entirely the doctrine of acting upon appearances.

Our reading had taught us that an individual can justify a homicide when he honestly acts upon a mere appearance of danger, and a reasonable belief that it is actually threatened, whether it existed or not.   *Shorter* v. *The People*, 2 Comst. (N. Y.) 193 ; *Logue* v. *Commonwealth*, 2 Wright (Pa.), 265 ; *Rippy* v. *The State*, 2 Head (Tenn.), 217 ; *Phillips* v. *Commonwealth*, 2 Duv. (Ky.) 328 ; *Pond* v. *The State*, 8 Mich. 150 ; *Campbell* v. *People*, 16 Ill. 17 ; *Schnier* v. *People*, 23 Ill. 17 ; *Maher* v. *People*, 24 Ill. 241 ; *Meredith* v. *Commonwealth*, 18 B. Mon. 49.   And this is the settled doctrine in Texas.   Penal Code, Art. 572 ; *Horbach* v. *The State*, 43 Texas, 242 ; *Irwin* v. *The State*, 43 Texas, 236 ; *Johnson* v. *The State*, 27 Texas, 758.

In *Campbell* v. *People*, *supra*, the court say: "A contrary rule would make the law of self-defense a snare and a delusion.   It would become but a mockery of the sacred right of self-preservation."

*George McCormick*, Assistant Attorney General, for the State.   As to the errors complained of in the charge :   In the first place, the court will notice that no bill of exceptions was taken to any of the proceedings had on the trial below, and that no instructions were asked by the prisoner.

This being the case, this court must inspect the statement of facts as the only criterion by which to arrive at the sufficiency of the charges given ; and it is only when the court has misdirected the jury, or committed some other

material error calculated to injure the rights of the defendant, that a new trial will be granted. Pasc. Dig., Art. 3137. As the charge of the court was not excepted to at the time it was given, this court will look to the fact whether it did in fact prejudice the cause of the prisoner—not whether it might remotely have done so, or that it is in some of its parts erroneous. The error complained of, where there is no bill of exceptions, must be such a material error as did, in effect, prevent the prisoner from having a fair trial. *Bishop* v. *The State*, 43 Texas, 390. To test the sufficiency of the charge, the evidence in the case upon which it was predicated must be considered, and, if it is shown thereby that no possible harm was done the prisoner, it certainly must be satisfactory.

The facts are patent that the prisoner went, in the capacity of a special deputy sheriff, to arrest the deceased; for what offense, or upon what sort of a writ, or where or by whom the same was issued, the record is purposely silent—these being facts peculiarly in the possession of the prisoner, which he did not see proper to produce before the jury.

But I may admit the prisoner was a special deputy sheriff for Bell county; he goes over into Milam county to arrest the deceased, either upon a charge of having committed a misdemeanor or a felony; rides up to him with his brother, who is armed, and who goes with him to assist in making the arrest; calls upon the deceased, at the distance of a few feet, to surrender; whereupon the deceased starts to gallop off and escape, when the prisoner fires upon him from the rear, shooting him under the blade bone and the ball coming out under the left nipple of the breast, thus shooting the deceased from behind and directly through the back. These facts are the plain, unvarnished facts of the killing.

But the prisoner, on the trial, introduces his brother, who, the evidence shows, was present at the killing, with a drawn pistol in his hand, presented at the unfortunate boy who

was being murdered, assisting, aiding, and consenting to the deed, and who, in point of fact and in the eyes of the law, is equally guilty with the prisoner, and attempts to show by his evidence that this boy—who weighed only an hundred pounds, had no beard, and was scarcely eighteen years of age—was attempting to draw his pistol for the purpose of killing the prisoner, or inflicting great bodily harm upon him, when these two men were within a few feet of him, with pistols drawn and presented, demanding his surrender !

The honest judge and the sensible jury who tried this cause did not believe such testimony, and they were right.

In the first place, the witness Plasters was not a competent witness, and should yet be indicted as a principal in this crime.

In the second place, the inducements for this witness to swear falsely were so great as hardly to be overcome.   Here was his beloved brother upon trial for a crime, in which the witness had also participated, that might consign him to a felon's cell.   The mortification, the disgrace that would, in case of conviction, necessarily be cast upon the witness and his family, all conspired to induce him to testify as he did, and did, no doubt, have their proper weight before the jury who heard him.

Besides, the facts of the case show deceased was not attempting to draw his pistol, or engaged in any act that could induce the prisoner for a moment to believe himself in danger of bodily harm, or that he was violently resisted. The fact that deceased's pistol was carried in his waistband, where it was found after he had fallen from his horse, shows he had drawn no weapons.   The fact that the back of the deceased was towards the prisoner when the shot was fired proves that the prisoner was not being assaulted, and he knew it.   The fact that the prisoner, after he had fired the fatal shot, and the deceased was lying upon the ground,

unhorsed and defenseless, endeavored to fire again, and would have done so if not called to stop, shows that his heart was full of malice and fatally bent on mischief.

It is urged that, as the pistol was found half-way out of the waistband, after deceased had fallen from his horse, and was half cocked, the deceased therefore must have attempted to draw and cock it before he was shot. This cannot be true, for the very fact that the deceased was shot from behind, that he fell over backwards from his horse, head foremost, would be most likely to throw the pistol out and place it in the position it was found; and the fact that the pistol was half cocked only goes to show that the deceased carried it that way, as is most usual.

Now, upon this state of facts the jury assessed the lightest penalty the law allows for murder. Is there any less penalty for the offense made by the evidence? Could the jury, under their oaths, have found defendant guilty of manslaughter, or have acquitted him? If they could have done either, under the facts as I understand them, then the court erred in his charge to the jury, and this cause should be reversed.

In view of such evident proof of guilt this court will not reverse, because some of the subdivisions of the charge may be subject to criticism, and especially so when, taken as a whole, it presented the law applicable to the case, and no bill of exceptions was taken at the time. *Ross* v. *The State*, 29 Texas, 500; *Cox* v. *The State*, 41 Texas, 1; *Gilmore* v. *The State*, 36 Texas, 334; *O'Connell* v. *The State*, 18 Texas, 363; *Anderson* v. *The State*, 31 Texas, 440.

ECTOR, Presiding Judge. The defendant was indicted in the district court of Milam county, charged with the murder of Willis Parker. On his application the venue was changed to the district court of Robertson county, where the defendant was convicted of murder in the second degree, and his

punishment assessed at five years' confinement in the penitentiary.

The defendant made a motion for new trial, principally on the ground that the court erred in its instructions to the jury in each of the eighteen subdivisions of its charge, and because the verdict of the jury was contrary to the evidence. This motion was overruled.

The 1st error assigned is that the court erred in its definition of murder, and of express and implied malice. The court instructed the jury that "murder is defined by the statute as follows : Every person with a sound memory and discretion, who shall unlawfully kill any reasonable creature in being, within this state, with malice aforethought, either express or implied, shall be deemed guilty of murder." The presiding judge, in the 14th paragraph of his charge to the jury, proceeds : " Should you find that defendant killed Parker, and that he is not justified in doing so, then in the necessary defense of his person, or as an officer being violently resisted, and having just ground to fear danger to his own life, then you will proceed to your 3d inquiry—that is, whether the killing was with malice. Malice is either express or implied. All murder upon express malice is murder of the first degree. Murder of implied malice is of the second degree.

" 15. The attorney for the state having announced to the jury that he did not claim that the killing in this cause was upon express malice, you are charged only on the law of implied malice. You may infer malice from the willful and deliberate taking of human life by a person of sound mind, without provocation or without a considerable provocation. Every rational creature is presumed to contemplate and intend the natural and probable consequences of his deliberate acts."

This portion of the charge is objected to because, 1st, it fails to define murder in the second degree ; and, 2d, because

the court takes from the jury the consideration of murder with express malice, and confines them to murder with implied malice, without ever defining either. These objections are not well taken. No injustice was done to the defendant by the court telling the jury that he would not charge them upon express malice, as it was not claimed that the killing was done upon express malice.

In every indictment for murder the defendant therein is charged with having killed the deceased with malice aforethought. Malice aforethought is either express or implied malice. About the most concise definition of these legal terms is given in 4 Blackstone, 198, *et seq.* "Express malice is when one, with a sedate and deliberate mind and formed design, doth kill another; which formed design is evidenced by external circumstances discovering that inward intention, as lying in wait, antecedent menaces, former grudges, and concerted schemes to do him some bodily harm. * * * Where no malice is expressed, in many cases the law will imply it. * * * And if a man kills another suddenly, without any, or without a considerable, provocation, the law implies malice; for no person, unless of an abandoned heart, would be guilty of such an act upon slight or no apparent cause."

To constitute a killing with express malice, the killing must result from an act done in pursuance of a formed design of a sedate, deliberate mind to kill the deceased, or to inflict upon him, by an unlawful act, some serious bodily harm which might probably end in depriving him of life. *Farrer* v. *The State*, 42 Texas, 271; *McCoy* v. *The State*, 25 Texas, 33. This sedate and deliberate condition of the mind, like every other fact, may be proved by any circumstance which will satisfy the minds of the jury beyond a reasonable doubt. When the killing of any person has taken place without any cause which will in law justify, excuse, or extenuate the homicide, and it was not done with

a sedate and deliberate mind and formed design, the killing would be deemed to be with implied malice, for the law would imply the malice.

Applying these principles to the 1st error assigned, we believe that it is not well taken.   We think that the charge on this point would have been much plainer to the jury if the definition of murder and of implied malice had been in more immediate connection with each other.   A definition of murder is in the first part of the charge, and of malice in the 14th and 15th subdivisions of the same.

The 6th instruction given to the jury was clearly erroneous, when taken in connection with the evidence.   It is as follows :   "If you believe from the evidence that defendant killed Parker, he is not justified in so doing, and the killing was unlawful, unless, at the time, defendant was violently resisted, and had just grounds to fear danger to his own life from Parker, in executing the writ."   The defense relied on in this case was that, at the time of the killing, the accused had been specially deputized by the sheriff of Bell county to arrest Parker, and for whose arrest it is insisted that the defendant had a legal warrant ; that, in executing the warrant of arrest, he was resisted by Parker, and that, at the time he killed Parker, he had good grounds to believe he was in danger of losing his life or suffering serious bodily harm from Parker.   The law says that an officer or other person executing an order of arrest is required to use such force as is necessary in overcoming resistance to the execution of such order, "but he shall not take the life of the person resisting arrest unless he has just grounds to fear that his own life will be taken, or that he will suffer great bodily injury in the execution of the order."   This is the 9th restriction to Articles 2213 and 2214, Pasc. Dig.

The 7th instruction given to the jury reads :   "If you believe from the evidence that defendant was specially

appointed to execute the particular writ against Parker, and no other, then it was the duty of the defendant to make known to Parker his purpose to arrest him, and also to make known to Parker the capacity in which he was acting; and, if he did not make known to Parker the capacity in which he was acting, Parker had the right to defend himself against an arrest; and, if the evidence shows that he was killed because of making a resistance, and that defendant had not made known to him the capacity in which he was acting, such killing would be unlawful.''

Whilst it is the duty of an officer attempting to arrest to make known his purpose and the capacity in which he acts, if, however, that purpose and capacity are known to the party when an arrest is attempted, and the arrest is otherwise lawful, submission to arrest is a duty, and resistance is unjustifiable. See *The State* v. *Anderson*, 1 Hill (S. C.), 343; Roscoe on Cr. Ev. 755; *Tiner* v. *The State*, 44 Texas, 131. In view of the testimony in this case we think that the court should have qualified the 7th paragraph of its charge, as above indicated. The general character of the deceased, in prosecutions for murder, may be proved when it could serve to explain the actions of the deceased at the time of the killing, to show that defendant acted in self-defense; but the actions it would serve to explain must first be proved before permitting proof of the character of the deceased. It was certainly not admissible for the defendant to prove the character of the deceased for honesty; for this would not serve to explain the actions of the deceased at the time he was killed, or to show that in the killing of the deceased the defendant was only acting in self-defense, and was under a reasonable fear of his life or serious bodily injury from the deceased. 1 Whart. Am. Cr. Law, 641, 642; *Horbach* v. *The State*, 43 Texas, 242.

There is one other question discussed in the brief of defendant's counsel which we feel it is proper that we

·should notice in this opinion.    The 1st error to which our .attention is called is, " that it nowhere appears from the record that the defendant was ever arraigned, or allowed to ·enter his plea."    Upon this question of arraignment, on an examination of the corrected copies of the record sent up by the clerks of Milam and Robertson counties, in answer to the *certiorari* ordered, it appears that the judge's docket of the Milam district court shows that, on the 23d day of November, 1876, the defendant was arraigned, and pleaded not guilty, and that the venue was then changed to Robertson county on the application of the defendant; but in the ·entry of the order for the change of venue the clerk failed to state in the order the fact of the arraignment of the prisoner, or that he pleaded not guilty.

Again, the corrected transcript sent up by the clerk of Robertson county shows that, on the 11th day of January, 1877, there was an entry made on the docket of the district judge, as follows, viz.:    " By consent of defendant the order of arraignment and plea of not guilty, taken at last term of the district court of Milam county, and omitted to be entered of record, is now entered for then."    This order, like the one made in Milam county, was also omitted from the minutes of the court, and appears only on the judge's docket.    Such omissions should not occur.

The assistant attorney general, in his able brief filed in this case, insists that the defendant and his counsel are bound by the solemn admissions made to the court before which the defendant was tried, and that the entry on the judge's docket is a part of the record; and we are cited by him to the cases of *Zimenes* v. *Zimenes*, 43 Texas, 458; *Rhodes* v. *White*, 29 Texas, 188; and *Miller* v. *Richardson*, 38 Texas, 502.

We deem it unnecessary to determine whether it suffi-ciently appears from the record that the defendant has been arraigned, and pleaded not guilty, for this matter can be put

beyond question on another trial by complying with all the formalities required on those points by the statute.

If the record shows that a defendant has pleaded not guilty in any case, but fails to show that an arraignment has taken place, a judgment of conviction would not be reversed by this court simply because the record was silent on the subject of an arraignment. We would consider that the arraignment had been waived. If the record, however, showed neither arraignment nor plea, then the judgment would be set aside. *Wm. Early* v. *The State*, decided at the Tyler term, 1876, of this court, and the authorities there cited, *ante* p. 248.

The charge of the court, taken as a whole, gave undue prominence to the idea that, before defendant could justify the killing, it must appear that defendant killed Parker to save his own life, when he would have been justifiable in killing Parker if he had just ground to fear that he would suffer great bodily injury in the execution of the order of arrest. It is true that the court, in a general way, in its 9th instruction, stated the law correctly. An erroneous charge upon a particular point, and specially applied to the facts in evidence, is not cured by a correct instruction couched in general terms.

Because the district court misdirected the jury as to the law, the judgment is reversed and the cause remanded.

*Reversed and remanded.*