## MARK TINER V. THE STATE.

SELF-DEFENSE.—A party guilty of a misdemeanor and fired on by a policeman while avoiding arrest may repel such attack in self-defense by returning the fire, and if in so doing he kill the policeman such killing would not necessarily be unlawful.

APPEAL from Travis.   Tried below before the Hon. J. P. Richardson.

The facts sufficiently appear in the opinion.

*Walton, Green & Hill* and *Sheeks & Sneed*, for appellant.

*A. J. Peeler, Assistant Attorney General,* for the State.

GOULD, ASSOCIATE JUSTICE.—Appellant, Mark Tiner, was tried under an indictment charging him with the murder of Cornelius Fahey, a policeman of the city of Austin, the result of the trial being a conviction of manslaughter.

Taken most strongly in favor of defendant, the evidence might lead to the conclusion that, as he was riding in the streets of Austin near the hour of midnight, he was ordered to halt by two persons who were, but whom he did not know to be, policemen, and that whilst he was himself simply seeking to avoid them he was by one of them fired upon, and in his own necessary defense returned the fire, killing the deceased.   Whether he or one of the policemen fired first, whether when he was fired upon he was resisting an arrest either lawful or unlawful, or whether he was not fired upon when he was either doing nothing or at most seeking to escape arrest, were questions of fact on which it was possible for the jury to have arrived at different conclusions.   Evidently it was a case in which it was proper for the court to explain the law of self-defense in case of unlawful violence by an officer of the law.

The portion of the charge given by the court bearing on the law of self-defense is as follows:  "Every person has a

right to resist an unlawful attack upon his person, and the degree of force he may use in resisting is governed by the force and danger of the attack. If he is attacked in such manner as to reasonably appear to endanger his life or limb he may resist, even to taking the life of his assailant, but to justify such resistance the attack on him must be unlawful.

"A policeman in the discharge of his duty has the right to arrest without a warrant any person committing an of-fense against the law, and under the law of the State, commonly known as the 'arms law,' it was the duty of the deceased as a police officer to arrest any person carrying arms in violation of that law. If the defendant was carrying arms in violation of that law and the deceased commanded him to halt with the design of making an arrest, if the defendant knew that the deceased was a police officer it was his, defendant's, duty to obey the command to halt; if he refused to obey and killed the deceased to resist the arrest, then he is guilty of murder. If the defendant did not know the official character of the man who commanded him to halt he had no right to kill the deceased, unless he had reason to apprehend an attack on himself, dangerous to his life or limb. The policeman had no right to fire upon the defendant to enforce his command to halt; but even if the policeman fired the first shot, and the defendant knew that the shot was fired for the purpose of enforcing the arrest, then he had no right to kill the deceased to resist the arrest."

It is to be observed of this charge that it does not state what the law is if the defendant knew that it was a policeman and yet acted in defense of his life. The jury are told repeatedly that the defendant was not justifiable if he killed deceased for the purpose of resisting arrest. They are told of the limits of defendant's right of self-defense if he did *not* know the official character of the man who commanded him to halt. The object of the court seems to have been to guard

against an improper application or rather abuse of the right of self-defense. If there was in reality no necessity, real or apparent, for the killing, if the fact was known to defendant that he could protect his life effectually by simply halting or submitting to arrest, then he was not justifiable in killing. If he in fact availed himself of a seeming necessity which did not in reality exist, and which he knew did not exist, or of a necessity sought and created by himself, then the killing was not in self-defense. But we think the court, whilst thus explaining the limits of the right, was not sufficiently explicit in also explaining its extent as against an officer of the law. On this subject the defendant asked the following instruction: "No officer or other person ordered verbally (or who may see an offense committed) to arrest another is justified in killing, except the arrest be in case of felony or for the prevention of a felony; and if an officer shoot at any person whom he seeks to arrest who is guilty of a misdemeanor only, having met with no resistance, and whose life is not in danger, that person so shot at may defend himself the same as he could against an ordinary citizen under like circumstances." We think that this instruction supplied a defect in the charge as given, and that its refusal was error.

If the defendant killed the deceased in resisting a lawful arrest the killing was not justifiable.

By such resistance he placed himself so far in the wrong as to justify the officer in using the force requisite to overcome his resistance. (Paschal's Dig., arts. 1646, 2215, 2697.)

It is also true that it is the duty of every citizen to submit to lawful arrest. There is, however, a broad distinction between resistance and avoidance; between forcible opposition to arrest and merely fleeing from it, (See The State v. Anderson, 1 Hill, (S. C.,) 346.) There is no rule of law that he who flees from attempted arrest in cases of misdemeanor thereby forfeits his right to defend his life. It is certainly possible for the officer of the law to commit a

felony by shooting at a man or by other excessive violence even when attempting his arrest, (Caldwell *v.* The State, 41 Tex., 86,) and it would follow that the party thus feloniously assaulted might defend his life. (The State *v.* Oliver, 2 Houston, (Del.,) 605 ; or referred to in Harrigan and Thompson's Cases of Self-Defense, p. 716.)

In thus stating what we deem to be the law applicable to the case, if the controverted facts should be found in favor of defendant, it is not intended to intimate any opinion whatever as to those facts.

That part of the charge which instructed the jury as to the right of a policeman to arrest without warrant any one carrying arms in violation of the arms law is objectionable rather because of its form than its substance. It would be more correct to tell the jury under what circumstances the carrying of a pistol is forbidden.

It is not necessary to examine critically the other charges asked and refused. It is proper, however, to say that whilst it is the duty of an officer attempting to arrest to make known his purpose and the capacity in which he acts, if that purpose and capacity are known to the party when arrest is attempted, and the arrest is otherwise lawful, submission to the arrest becomes a duty and resistance is unjustifiable. (The State *v.* Anderson, 1 Hill, (S. C.,) 343 ; Roscoe's Cr. Ev., p. 755.)

The evidence of Musgrove as to what occurred between him and defendant very shortly after the fatal shot was perhaps admissible, as tending to throw some light on the animus of the defendant at the time of the killing, and his knowledge that the persons ordering him to halt were policemen. The testimony of witness Lock, however, seems so remote in its bearing that we think its exclusion on another trial would be proper.

Because the court erred in its charge, and in refusing the second instruction asked by defendant, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.