## A. F. MORGAN v. THE STATE.

*No. 669.   Decided March 13.*

1. **Murder—Charge—Provoking Difficulty—Abandonment of.**—On a trial for murder, where the evidence in substance showed, that the parties were friendly, and that the difficulty originated in a sudden quarrel, which did not clearly appear to have been provoked by either; that after the first demonstration made by either party, defendant got his gun and started towards town, whereupon deceased pursued him some seven or eight steps with a drawn knife, and in a threatening manner; *Held,* error for the court to charge the jury upon the law of provoking a difficulty, in connection with defendant's right of self-defense. But conceding that such a charge was called for, the court, in view of the facts stated, should further have instructed the jury as to defendant's rights in case they believed, that after provoking the difficulty he had abandoned the same in good faith, and was then pursued and attacked by deceased.

2. **Same—Imperfect Self-Defense.**—In every case in which the facts authorize a charge on provoking a difficulty, the court should indicate from the evidence the act of provocation, and define its effect and bearing upon the case, and to what extent such act would limit or abridge defendant's right of self-defense. The jury should not be left to speculation and conjecture as to the nature and quality of the act, nor the extent of the limitation and abridgment it would operate upon the defendant's rights.

APPEAL from the District Court of Brown.   Tried below before Hon. J. O. WOODWARD.

Under an indictment for the murder of one J. C. Lochrey, defendant at the trial was convicted of manslaughter, his punishment being assessed at two years' imprisonment in the penitentiary.

The three eye-witnesses to the killing, viz., Joe Lochrey, a son of deceased, Ural Slack, and Bob Morgan, a brother of the defendant, testified at the trial, and there is so little, if any, conflict in their testimony, that it is only necessary to reproduce that of Ural Slack, who testified for the State, as follows: "On the 27th day of April, 1893, I started from Sipe Springs, in Comanche County, in company with Mr. Lochrey, the deceased, Foss Morgan, the defendant, Bob Morgan, and Joe Lochrey, to go fishing on the Colorado River.   We camped that night on the bayou, about a mile from Brownwood.   Foss and I came to town to bring a letter that Foss had for his sister, who was going to school here; we got back to camp about 9 o'clock that night.   The others had eaten their supper and laid down on a pallet near the hind end of the wagon, between the wagon and the bridge. Foss told me to build a fire, while he cut some meat for our supper. I started a fire with some small brush, when Joe Lochrey started to put a log in the fire.   I told him not to put it in.   Foss said, 'No, Joe, don't put the log in; we don't want a fire that will burn all night; you lie down, and let Ural build the fire.'   Mr. Lochrey then said, 'You put it on if you want to, Joe; you do as you d——d please about it.'   Foss said, 'I don't know whether he will do as he d——d pleases or not.'   Mr. Lochrey got up and went to Foss, and began cursing

him. I went around to where they were. Mr. Lochrey went back to the pallet and sat down. Foss got the target gun out of the wagon, and told me, if his Uncle Jim didn't let him alone he was going to kill him. He could not unbreach the gun. Mr. Lochrey sat down on the pallet. He laughed and asked me what was the matter with Foss. Foss came back to where Mr. Lochrey was, and said, 'Uncle Jim, if we are going to quarrel this way, we had better hitch up and go home.' Mr. Lochrey cursed, and said he was not going to work his horse home that night. Foss said, 'Well, I will go up town and get a horse.' Mr. Lochrey said, 'By ¡God, you can't work old Charlie, either.' Charlie was Foss' horse. They only had two horses; one was old Charlie, and the other was Mr. Lochrey's horse. They worked both horses to the wagon. While they were standing by the wagon, Mr. Lochrey told Foss that he could kill him with his fist. After Mr. Lochrey told Foss that he could not work old Charlie, Foss got the shotgun from the ground, under the hind end of the wagon, and went to the front end of the wagon. I went to him, and he was loading some shells for the shotgun, and was talking to me about the way Mr. Lochrey had done him, and was cursing. I don't know whether Mr. Lochrey heard him or not. I left Foss at the front end of the wagon, and went back to the pallet. After a while Foss jumped off the wagon tongue, with the gun in his hand, and started to town. As he jumped off the tongue, he said, 'I've got enough of this.' At this time Mr. Lochrey was lying on the pallet, between where Foss was and the bridge. Foss started to the bridge, when Mr. Lochrey started to intercept him; he had an open knife in his hands. Foss said to him, 'Stop!' but he only went the faster, and Foss shot Mr. Lochrey, and he fell. It was about twenty-one feet from Mr. Lochrey's pallet to where he fell, and Foss was about fifteen feet from him when he fired. Foss started off in a run after Mr. Lochrey fell. Joe and I started to follow him, and he hollooed for us to go back. Joe and I then went to Mr. Taylor's camp, about fifty yards below us, on the bayou. I did not at any time that night see Mr. Lochrey at the front end of the wagon. We had some whisky. Foss bought a bottle for Mr. Lochrey in Sipe Springs. We drank it up during the day. Foss did not drink any of it; he washed his mouth out with it twice, and spit it out. He said his mouth was sore. I don't think Foss drinks whisky. I am 14 years old. I am a great friend of Foss. I came here with him from Comanche County. The defendant shot Mr. Lochrey with a shotgun, in Brown County, Texas, on 27th day of April, A. D. 1893. When Foss shot him he fell on his knees and hands; he never spoke any more; he is now dead. When they carried me back from Mr. Taylor's camp, I saw an open new knife lying by the side of deceased."

*Jenkins & McCortney*, for appellant.—1. The court erred in submitting to the jury the issue as to the defendant provoking a difficulty

with the deceased, or producing the occasion of taking his life, and in giving in its charge to the jury the law limiting or abrogating the right of self-defense.   "The charge must not only be applicable to the facts, but must be limited by them."   Sutton v. The State, 41 Texas, 514; Briscoe v. The State, 27 Texas Crim. App., 193; White v. The State, 28 Texas Crim. App., 73; Ball v. The State, 29 Texas Crim. App., 123; Surrell v. The State, 29 Texas Crim. App., 326; Hooper v. The State, 29 Texas Crim. App., 617; Schultz v. The State, 30 Texas Crim. App., 94.

2.   The court erred in refusing to give special charge number 3, asked by the defendant, to the effect, that if they did find from the evidence that the defendant provoked the difficulty with the deceased, but at the time of the killing he was leaving the deceased, and the deceased was following him with a deadly weapon, and the defendant thereupon shot the deceased, they should find him not guilty.   Brazzil v. The State, 28 Texas Crim. App., 587; McSpatton v. The State, 30 Texas Crim. App., 617; note to Stoffer's case, Horr. & Thomp. on Self-Defense, p. 231.

No brief for the State on file with the record.

HENDERSON, JUDGE.—The appellant in this case was tried in the District Court of Brown County on an indictment charging him with the murder of one J. C. Lochrey.   He was convicted of manslaughter, and his punishment assessed at two years' confinement in the penitentiary, and from the judgment and sentence in the case he prosecutes this appeal.   The appellant reserved a number of bills of exception, but the only one we regard as material is the court's charge on self-defense, in connection with the charge on provoking a difficulty by defendant.

The judge trying the case gave an admirable charge on murder of the first and second degree, and on manslaughter, and also on self-defense.   But in a subsequent portion of the charge he takes up the subject of self-defense again, and instructed the jury as follows:   "A party may have a perfect right of self-defense, though he may not be entirely free from blame or wrong in the transaction.   If the blamable or wrongful act was not intended to produce the occasion, nor an act which was, under the circumstances, reasonably calculated to produce the occasion or provoke the difficulty, then the right of self-defense would be complete, though the act be not blameless.   But you are further instructed, that a party can not avail himself of a necessity which he has knowingly and willingly brought upon himself.   Whenever a party, by his own wrongful act, produces a condition of things wherein it becomes necessary for his safety that he should take life or do serious bodily harm, then the law imputes to him his own wrong and its consequences to the extent that they may be and should be considered in determining the grade of his offense (if any), which, but

for such acts, would never have been occasioned. How far and to what extent he will be excused or excusable in law depends upon the nature and character of the act he was committing (if any) which produced the necessity that he should defend himself. When his own original act was in violation of law, then the law takes that fact into consideration in limiting his right of defense and resistance while in the perpetration of such unlawful act."

In the first place, it does not occur to us that there was any occasion for a charge on the subject of provoking a difficulty by the defendant in this case. The record shows, that the defendant and deceased, with others, were going from their home, in Comanche County, on a fishing excursion to the Colorado River, in Brown County. On their route they camped near the city of Brownwood, and the difficulty occurred at night in the camp. The deceased was lying down on a pallet, and defendant was cutting some meat to cook for supper. The son of deceased started to put a chunk on the fire. Defendant told him not to do it, as he did not want the fire to burn all night. The deceased told his son to put the chunk on if he wanted to, and to do as he d——d pleased about it. Defendant then said he did not know whether he would do as he d——d pleased about it or not, and deceased and defendant began cursing each other. Deceased got up off his pallet, and went to where defendant was, and cursed defendant, and told him he could kill him with his hand. Defendant then got a target gun out of the wagon, but could not unbreach the gun, and he put it down, and went to the deceased, who had gone back to his pallet, and said to him, "Uncle Jim, if we can't get along without fussing, we had better hitch up and go home;" and deceased cursed him, and told him he was not going to work his horse home that night, and defendant told him he would go and get another horse, and work with his own horse (old Charlie.) Deceased told him he could not take old Charlie either. Defendant then went to the wagon, got a shotgun, and started to town (Brownwood.) He passed on by the pallet of deceased, and deceased got up and followed him. Defendant told him not to come any further, or he would shoot him. Defendant then shot him. This was the testimony of the son of the deceased, and most favorable to the State. Other witnesses show, that deceased pursued defendant some seven or eight steps from the pallet, with a drawn knife in his hand, and advancing on defendant in a threatening manner, when he was shot. The difficulty which related to the homicide seems to have occurred in a sudden quarrel between former friends, and it is not clear that it was provoked by either. If we look to the beginning of the quarrel, it would rather appear that the deceased was the aggressor, and we can not regard the subsequent act of defendant in taking his gun and starting to Brownwood, with the avowed intention of getting another horse for the purpose of going home, as a provocation on his part on which to have predicated a proper charge on provoking a difficulty. But, conceding that there had been originally a provocation by defendant, then his

getting the gun and starting to town was evidence of an abandonment of the difficulty, and the court should have properly instructed the jury as to his rights in case they should consider him the aggressor in provoking the difficulty, and had afterwards abandoned the same in good faith, and was then pursued and attacked.

The learned judge furthermore in this charge tells the jury, that if defendant did any wrongful or blamable act by which he provoked the difficulty, his right of self-defense was limited or abridged. But he does not tell the jury of the nature and quality of the act which would operate to limit the right of self-defense or the extent to which the right would be abridged. There are some wrongful acts that would wholly cut off the right of self-defense; there are others which would limit the right of self-defense—that is, create what is termed the "imperfect right" of self-defense; and there are still others which would not operate to limit the right of self-defense at all. Cartwright v. The State 14 Texas Crim. App., 495; Cunningham v. The State, 17 Texas Crim. App., 90; Franklin v. The State, 30 Texas Crim. App., 628. In every case in which the facts authorize a charge on provoking a difficulty, the judge should be able to indicate from the evidence the act of provocation, and to define to the jury its effect and bearing upon the case, and to what extent such act limited or abridged the defendant's right of self-defense. This was not done in this case, but the jury were told, that a wrongful act on the part of defendant, which produced a condition of things which rendered it necessary for him to slay the deceased to preserve his life or his person from serious bodily injury, abridged the defendant's right of self-defense, and that such act of provocation would be considered by the jury in determining the grade of homicide of which they might find the defendant guilty. The jury were thus left to conjecture as to the nature and quality of the act of provocation which would create a limitation on defendant's right of self-defense and the extent of such abridgment. It was never the intention of the law in a matter of this importance to the defendant that a jury should be left thus uninstructed in the field of speculation. In our opinion, there is nothing in the statement of facts in this case to have authorized a charge on the subject of provoking a difficulty; and even if the facts warranted a charge on the question, the one given was radically wrong, and was calculated to injure the rights of the defendant.

It is not deemed necessary to notice other errors complained of by appellant, but, for the error in the charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.