## EUGENE HULL v. THE STATE.

### -No. 3879.  Decided February 6, 1907.

**1.—Murder in Second Degree—Jurisdiction—Judges Exchanging Districts— Constitutional Law—Criminal District Court.**

Where upon trial for murder in the Criminal District Court of Galveston County, the regular judge thereof requested the judge of the Civil District Court of Galveston County to hold court in his place, an objection that said latter judge could not sit in said criminal district court and try criminal cases is untenable, as a district judge has inherent power under the Constitution to try criminal cases.

**2.—Special Venire—Constable—Return of Sheriff.**

Upon a trial for murder, where it was shown that the constable by direction of the sheriff served a portion of the special venire, and the latter made the return to the court, there was no error.

**3.—Same—Continuance—Want of Diligence—Cumulative Testimony.**

Where upon trial for murder, upon third motion for continuance, the testimony of the absent witness would in all probability not have changed the result, and was probably cumulative in character; and the application did not show the whereabouts of said witness, or that he could be procured, etc., there was no error in overruling the motion.

**4.—Same—Evidence—Res Gestae—Declaration of Third Party.**

Upon trial for murder, there was no error in admitting in evidence the declaration of a witness who stated that he had pointed out the defendant to the policeman, stating, "there he is now: there is the man who pulled the gun"; and that the defendant said, "no s—n of a b—t—h of a policeman is strong enough to arrest me," and then broke and run and the policeman after him; that in a few moments thereafter the officer was shot. Besides this testimony being res gestæ, deceased was authorized as a policeman to arrest defendant for carrying a pistol without warrant, upon the information conveyed.

**5.—Same—City Commissioners—Appointment of Peace Officer—Statutes Construed—Bill of Exceptions—De Facto Officer.**

Upon trial for murder, in the absence of a proper bill of exceptions, there was no error in admitting the appointment of the deceased as a special police officer by the city commissioners of Galveston; and under article 43, Code Criminal Procedure, policemen are peace officers; and under articles 247–250, Code Criminal Procedure, peace officers are authorized to make arrests in certain cases without warrant; and article 342, Penal Code, authorizes such arrest of a person carrying a pistol, by a peace officer having knowledge or being informed thereof, besides this, the deceased under the facts was a de facto officer.

**6.—Same—Evidence—Convict—Credibility—Remoteness.**

Where upon trial for murder, the evidence showed that the defendant was convicted of burglary some four years previous to his trial, the same was not too remote to affect the credibility of witness.

**7.—Same—Bill of Exceptions—Certificate of Judge—Argument of Counsel.**

Where upon appeal from a conviction of murder, the bill of exceptions embracing the objection to the argument of State's counsel as not being warranted by the evidence, did not carry the certificate of the judge to that effect, it could not be reviewed; besides there was no requested instruction upon this matter.

**8.—Charge of Court—Adequate Cause—Official Character of Deceased.**

Upon trial for murder, where the evidence showed that defendant knew deceased was an officer attempting to arrest him when he shot deceased, there was no error in submitting a charge on murder in the first and second degree, as well as manslaughter.

**9.—Restrictive Charge—Self-Defense.**

Where upon trial for murder the court charged on several phases of self-defense, which was more favorable to the defendant than he was entitled to, he could not complain that the charge on self-defense was too restrictive.

Appeal from the Criminal District Court of Galveston. Tried below before the Hon. Lewis Fisher, presiding in the place of Hon. J. K. P. Gillaspie.

Appeal from a conviction of murder in the second degree; penalty, fifty years imprisonment in the penitentiary.

According to the defendant's statement he and his wife had been quarreling about some rings upon which they had been trying to get some money; that when they had finally got settled down, and went down the street, and he started to take the rings away from her, that a crowd gathered around, and he ran and that the deceased came up in a buggy behind him and hollowed at him to halt, and that defendant shot at him twice; and he also said he shot four times. This with the statement in the opinion is sufficient to understand the errors assigned.

R. H. & Alice S. Tiernan, for appellant.—On question of jurisdiction: 18 vol. Am. & Eng. Ency. of Law (2nd ed.), 724; Geible v. State, 28 Texas Crim. App., 170. On question of quashing venire: Hunter v. State, 34 Texas Crim. Rep., 599. On question of appointment of peace officer: Williams v. State, 42 Texas, 466; Jones, Mayor v. Doherty, 56 S. W. Rep., 596; O'Neal v. State, 32 Texas Crim. Rep., 42; Alford v. State, 8 Texas Crim. App., 545; Brumby v. Boyd, 66 S. W. Rep., 874. On question of arrest without warrant: Cortez v. State, 69 S. W. Rep., 536; Montgomery v. State, 65 S. W. Rep., 537. On question of improper argument: Black v. State, 65 S. W. Rep., 906; 2 vol. Ency. Pl. & Pr. 727; Pool v. State, 88 S. W. Rep., 350; St. Clair v. State, 92 S. W. Rep., 1095. On question of self-defense: Byrd v. State, 47 S. W. Rep., 721; Arto v. State, 19 Texas Crim. App., 126; Francis v. State, 55 S. W. Rep., 488; Meuly v. State, 26 Texas Crim. App., 274.

F. J. McCord, Assistant Attorney-General, for the State.—On question of jurisdiction: Nobles v. State, 38 Texas Crim. Rep., 330. On question of peace officer: Ex parte Tracey, 93 S. W. Rep., 538.

HENDERSON, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for fifty years; and prosecutes this appeal.

Appellant's first assignment of error questions the jurisdiction of Judge Lewis Fisher to try said case. The record shows that Judge Jas. K. P. Gillaspie is the Criminal District Judge of Galveston and Harris Counties, and that Judge Lewis Fisher is the Judge of the 10th Judicial District composed of the County of Galveston, and

that Judge Fisher was holding court for Judge Gillaspie at the latter's request. The contention is that because the judge of the Criminal District Court of Galveston and Harris Counties, under the Constitution (see art. 5, sec. 1, of the Constitution, and acts of the Legislature approved July 23, 1870, Laws of Texas, vol. 6, page 211) has jurisdiction of criminal cases only, such judge is not authorized to exchange with the judge of some other district court; nor can such other judge hold a term of the criminal district court and try criminal cases. It will be seen on inspection of said article of the Constitution that the Criminal District Court of Galveston and Harris Counties is continued with the same district, jurisdiction and organization existing at the time of the adoption of the Constitution until otherwise provided by law. We know of no change on this subject since the creation of this court by the act of July 23, 1870 (see secs. 15–19, etc., Revised Civil Code 1895) ; that act gave said court jurisdiction to try and determine both felony and misdemeanor cases, and its jurisdiction has been so continued by the Constitution. Judge Fisher's incumbency is under the general provisions of the Constitution relating to district courts. Section 8 of article 5, of the Constitution, gives the district court original jurisdiction in all cases of the grade of felony as well as such civil jurisdiction as is conferred on the district court. There is another provision of the Constitution which authorizes the jurisdiction of misdemeanors, in the county court (see sec. 16, of art. 5) these can be transferred by legislative act to the district court. Said section also provides that the county court shall not have criminal jurisdiction in any county where there is a criminal district court unless expressly conferred by law, etc. Section 11 of said article 5 provides for the exchange of districts by judges, to wit: "When the judge of the district court is disqualified for the causes above stated, the parties may, by consent, appoint a proper person to try said case, or upon their failing to do so a competent person may be appointed to try the same in the county where it is pending, in such manner as may be prescribed by law, and the district judges may exchange districts, or hold courts for each other when they may deem it expedient, and may do so when required by law. The disqualification of judges of inferior tribunals shall be remedied, and vacancies in their offices filled, as may be prescribed by law." Now, it is insisted that because the judge of the Criminal District Court of Galveston and Harris Counties cannot try civil cases, that, therefore, a district judge who, under the general terms of the Constitution and provisions of law, can try both civil and criminal cases, cannot sit in said criminal district court and try criminal cases. We do not believe this contention is sound. It is true, in Galveston County, until otherwise provided by law, the criminal court has exclusive criminal jurisdiction in all cases of felony, but this does not contravene the inherent power of a district judge to try criminal cases in said criminal district court. No doubt a district judge of some other district than Galveston might

sit in said criminal district court, and we understand the inherent power of a judge of the 10th Judicial District to be equal to that of any other district judge under our Constitution. We accordingly hold that the judge of the 10th Judicial District Court was authorized to sit as judge of said criminal district court and try said case.

Appellant excepts to the action of the court in refusing to quash the special venire for the trial of this case. The ground asserted for the quashal of same was because the constable served a portion of said special venire, to wit: some twenty-five. This it appears was done at the request of the sheriff who summoned the remainder of said special venire. The constable made return to the sheriff and he made return to the court. We think this is proper practice. We do not believe it was contemplated that a sheriff in person should make service of the writ, which is directed to the sheriff or any constable of the county. All the service could be made by the sheriff's deputies, their returns made to him, and he make return to the court, or it could be made as here, in part by him and his deputies, and in part by the constable. Of course, if the writ required amendment this should be done by the sheriff, and we gather that this was the course pursued in this case.

Appellant excepted to the refusal of the court to continue the case. This was the third motion for continuance, and was based on the absence of the witness Ceria Garza, the other witness for whom the application was made, to wit: Ida Walton, being present. There was no diligence used as to the witness Garza. This witness Garza was not summoned to prior terms of the court, though the indictment was returned on the 29th of July, 1905, and two continuances had been had by appellant, and no process was issued for this witness until the 15th of November, 1906, and no effort is shown on part of appellant to ascertain what testimony said witness would give, nor any reason shown for lack of diligence in this respect. It is stated in the application that the said witness Garza would testify that witness heard deceased, who was pursuing appellant in a buggy, say, "Stop, or I'll kill you." It is not shown in the application that appellant heard this, and it occurs to us, from this record, that if the witness would swear to this expected evidence, that it would not reasonably change the result. Furthermore, the bill of exceptions does not show that the testimony would not be of a cumulative character, nor does it show the whereabouts of said witness, or that the witness could be procured by continuance to another term of the court.

During the progress of the trial appellant excepted to the testimony of the witness Joe Devoti, as follows: "Q. State to the jury what you said to officer Mayo. A. I told him there was a man around the corner who had pulled a gun on a man and had clinched with a woman, and taken something away from her, and just about that time this man (the defendant) walked up there; and I said to the officer 'There he is now, there is the man who pulled the gun,' just like that, and this man came right up and said, 'No son-of-a-bitch of a

policeman is strong enough to arrest me,' and he broke and run and Mr. Mayo after him in his buggy. I walked about ten or fifteen feet west and then went across the street. I was in my shirt sleeves, and went in to get my coat, and when I came out, officer Mayo was shot." No reason is stated, in connection with this bill, which is taken in the statement of facts, for objecting to the testimony. As it appears to us, it was part of the res gestæ, and, moreover, deceased was authorized as a policeman to arrest one carrying a pistol without a warrant, and this information conveyed to the officer, if he was such, that appellant was carrying a pistol.

In the statement of facts there is also a bill of exceptions to the refusal of the court to strike out the testimony of J. D. Kelly. The record, in this connection, shows as follows: Defendant's counsel moved the court to strike out the testimony of J. D. Kelly because there was nothing to show whether the commissioners of the City of Galveston had authority to appoint Mayo as an officer, and in fact had no authority to appoint him a peace officer and inspector in the health department, and in this connection also the oath and bond of Mayo as policeman were objected to. The condition of the appointment is as follows: "Whereas, the above bonded Martin Mayo, has been appointed by the board of city commissioners to the position of special police officer in and for the said city, at a salary of one cent per month, and if the said Martin Mayo shall truly and faithfuly discharge the duties of special police officer of the City of Galveston under said appointment, then this bond and obligation shall cease and become void, otherwise to be and remain in full force and effect," and is signed by Mayo as principal, and two sureties. The oath taken is to the effect that said Mayo will faithfully and impartially discharge and perform all the duties incumbent upon him as special police officer in and for the City of Galveston, etc. Counsel for defendant objected to all the foregoing evidence because Mayo was not specified as a peace officer as required by the statutes of Texas, and because only a peace officer can make an arrest without a warrant, and because the evidence does not show that Martin Mayo was a peace officer within the statute giving him authority to arrest without a warrant. The contention of appellant that Mayo was not a peace officer is not correct. Article 43, Code Criminal Procedure, makes policeman peace officers. Articles 247, 248, 249 and 250, Code Criminal Procedure, authorize peace officers to arrest in certain cases without a warrant when there is a breach of the peace, and it occurs to us that there was a breach of the peace, if not in the presence of the officer, he was immediately informed thereof. Article 342, Penal Code, authorizes any peace officer to arrest any person carrying a pistol on his knowledge or upon information derived from some credible person. If this bill of exceptions, as taken, was in a condition to be reviewed, still it occurs to us there is no question as to the admissibility of the testimony. The provisions of the charter of Galveston are not

brought before us in this record with reference to the appointment of police officers by the commissioners. If appellant desired to avail himself of these matters they should have been contained in the record so as to show the want of authority to make the appointment of Mayo as police officer, or as a health officer with the functions of policeman. Besides this, it occurs to us that there is enough in this record to show that Mayo was acting as a police officer and had been so acting and so- regarded for a considerable length of time, and that he was a de facto officer.

Appellant should have made his bill of exceptions complete in itself so as to have shown the error of the court in admitting this testimony, otherwise it will be presumed that there was full authority in the commissioners to make the appointment, and authorize Mayo to act as a health officer with the functions of policeman, or to act as a special policeman.

We notice that appellant in his brief refers us to the testimony of Dr. Trueheart. If we were authorized to consider that in connection with his bill of exceptions, we would find from this witness that Mayo was an inspector in the department, and he also was made a special policeman charged with the arrest of offenders the same as other officers on the police force; that he was working as an inspector in the health department, and as special policeman, and that as such he was charged with the duty of looking after anything that might come under his duty, such as depredations or other violations of the law, and that he was under orders of the chief of police.

On examination of appellant he was asked the question if he had ever been in the penitentiary. He replied in the affirmative, that he had been sent there for burglary. This was objected to for the reason that "the record of this court shows (which the court will take judicial knowledge of), that appellant was convicted some four years ago of burglary, which makes the conviction too remote to affect the credibility of the defendant." We do not agree to this contention.

Appellant also objected to the argument of the district attorney in which he alluded to the defendant as a habitual pistol toter, and that he had shot down an officer in uniform. This was objected to on the ground that there was no testimony showing that appellant was a habitual pistol toter, or that Mayo was in uniform when he was shot. While the bill says there is no testimony to support the suggestion of the district attorney, there is no certificate of the judge to that effect. His approval of the bill is merely an approval to the effect that appellant urged that as a ground of objection.

Appellant says that the court refused to instruct the jury to disregard the remarks of said Oliver. The bill does not show that the court was presented with a written request on that subject, and if appellant thought that there was error in this matter, he should have presented a written charge to the court on the subject, and on refusal of the court to give it, and the proper showing that there were no facts to

justify the remarks, then the proposition advanced might be subject to review at the hands of this court.

Appellant insists that the court should not have charged on murder in the second degree, because this was only a case of manslaughter; says that the evidence unmistakably shows that there was no announcement on the part of deceased to make the arrest, and no declaration to appellant that he was an officer or in what capacity he was proposing to act. It occurs to us that the testimony shows almost without question that appellant knew deceased was an officer. He declared in his presence that no policeman could arrest him; he declared afterward, before he could have known except what he knew before the homicide, that he had shot a policeman. This case does not come under Montgomery v. State, 65 S. W. Rep., 537, referred to by counsel in his brief—we hold the court properly gave a charge on murder of the first and second degree, as well as manslaughter. We believe that the court sufficiently charged the jury that they should view the homicide from the standpoint of the defendant at the time.

Appellant contends that the charge on self-defense, as given by the court, was too restrictive in that it required appellant to act as against deceased, because he believed a mob was after him. This was in accord with appellant's own testimony on the subject, but we think the charge sufficiently gave appellant the right to defend against an unlawful assault by said deceased. In this connection we note the court also gave a charge on arrest by the officer (deceased) on account of a breach of the peace by defendant in committing an assault on his wife. This charge authorizes appellant to resist an arrest if it was being made on that account. It occurs to us that this charge is more liberal than appellant was entitled to. There is testimony which, in our opinion, tends to show that this breach of peace occurred, if not in the presence of the officer, in such close juxtaposition to him, as authorized him to make the arrest. The court also gave a charge to the effect that if appellant was carrying a pistol at the time but was carrying it home from some place, he had a right to do this, and deceased had no right to arrest him, and that he was authorized to resist an arrest, etc. We do not believe the facts authorized the court to give a charge of this character. If appellant was carrying a pistol, in fact, to his home, and had it on him at the time, he could set up this as defense in court, but we do not believe he could resist the arrest on this ground. However, the court gave him a charge on this subject more favorable we think than he was entitled to, and certainly he cannot complain. We have examined the record carefully, and in our opinion appellant was given a fair and impartial trial, and the facts of the case fully justify the verdict, and the judgment is affirmed.

*Affirmed.*