JOHN HUMPHREY V. THE STATE.

No. 2287.    Decided April 1, 1914.

**Murder—Self-defense—Charge of Court—Provoking Difficulty—Abandonment.**

Where, upon trial of murder, the evidence showed that the deceased, and not the defendant, provoked the difficulty, and there was no issue of an abandonment of the difficulty by defendant and the issue of self-defense was clearly raised, the court's charge in restricting defendant's right of self-defense by submitting a charge that if defendant provoked the difficulty, etc., he could not avail himself of the law of self-defense, was reversible error.

Appeal from the District Court of Rusk. Tried below before the Hon. W. C. Buford.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*Beard & Davidson* and *Futch & Tipps* and *R. T. Brown,* for appellant.—On question of provoking the difficulty: Cartwright v. State, 14 Texas Crim. App., 486; McCandless v. State, 57 S. W. Rep., 672.

*C. E. Lane,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the second degree, his punishment being assessed at seven years in the penitentiary.

The facts are voluminous, but it is deemed unnecessary to make an extended statement of the evidence. It is disclosed by the testimony that deceased, Lewis Finley, lived near to and south of appellant on an adjoining tract of land. Appellant owned a tract of land which he used as his home. Some years before this trouble the father of the deceased, and during his life time, purchased from Major Wathan of Dallas a tract of land adjoining the home of appellant. He failed to pay for this land, and when he died his son, the deceased, purchased the land from Wathan and held it for sometime, but failing to pay for it Wathan

took the land back and subsequently sold it to appellant. Appellant stated to Wathan at the time he would not make the purchase as long as deceased was trying to pay for it, and was informed by Wathan that he had taken the land from deceased and he had nothing more to do with it, thereupon appellant purchased the land from Wathan by paying some cash, executing his notes for the unpaid balance, and in this way became the owner of the tract of land. This seemed to outrage the deceased very much, and he made threats, which were communicated to appellant. Shortly prior to the killing appellant took up some hogs of deceased which were running on his premises. Deceased came, took them from appellant's pen and was quite insulting to appellant at the time. He asked what was the charge on taking up and keeping his hogs, and was informed by appellant that he made no charge, and only asked that he keep his hogs up or off his premises, and for himself, deceased, not to come on his place any more. On the morning of the homicide deceased hitched his team to his wagon and came to and drove through a gate on appellant's premises, and was going through appellant's field. In the wagon of the deceased was his wife and mother-in-law. Appellant approached and told him to go back and not to come on his premises. This deceased declined. Deceased had another wagon with him driven by a boy, who immediately turned and drove back. The immediate facts are somewhat in dispute. Appellant's theory was he acted purely upon self-defense against the attack or threatened attack of the deceased with a gun. The facts are not in dispute that deceased had a gun in his wagon, and that the gun was fired. The State's case was that appellant after stopping the team of the deceased, left them and started on towards the back of the wagon, and after reaching the rear end of the wagon, made an assault before the deceased reached for his gun. Appellant came out of the trouble uninjured and deceased was killed. Appellant's evidence is to the effect he left the head of the team and was standing near the rear of the wagon when deceased got his gun. As to who fired first is an issue by the facts. This may be a sufficient statement to bring in review the only question thought necessary to discuss..

The court gave a charge upon murder in both degrees, manslaughter and self-defense. The appellant asked a special charge, which was qualified by the court. The charge asked and given was as follows: "You are instructed that if you believe from the evidence in this case that John Humphrey, the defendant, was lawfully in possession of the land inside of the fence and field through which Lewis Finley, the deceased, was driving or attempting to drive his wagon for the purpose of removing ribbon cane from the land beyond this field, and if you further believe from the evidence that the said Lewis Finley was on said land without authority from the said John Humphrey, then you are instructed that under the law that the said John Humphrey had the legal right to arm himself with a gun, go and meet Lewis Finley, accost him and demand that he leave the field, and you are further instructed that the said John Humphrey had the legal right to use all lawful means to protect his pos-

session of said land and repel a trespass upon it by the said Lewis Finley. So if you should believe from the evidence in this case that the defendant, John Humphrey, met and accosted the said Lewis Finley for the purpose of getting the said Lewis Finley to go out of said field, and while so doing the said Lewis Finley resisted him and refused to go, and did any act toward, or used any word to the said John Humphrey, then the said John Humphrey would have the legal right to use such force as was necessary to eject the said Lewis Finley from said field, and if the said Lewis Finley did any hostile act toward the said John Humphrey, viewing it from the standpoint of the said John Humphrey, which made it reasonably appear to the said John Humphrey that his life was in danger, or that he was in danger of serious bodily injury, then, in that event, he would have the legal right to shoot and kill the said Lewis Finley, and if you so believe from the evidence, the defendant, John Humphrey, would be guilty of no offense under the laws of this State, and you will return a verdict of not guilty." This was given by the court with this additional charge in this connection: "Gentlemen of the jury: In connection with the special charge which has just been submitted to you, asked by the defendant, I give you the following and additional instructions in connection therewith: That if you find from the testimony that the defendant, having in mind the specific and definite intention and purpose to kill the deceased, at all hazards, by his acts, words or conduct provoked the difficulty or produced the occasion which resulted in the homicide, then the defendant could not avail himself of the law of self-defense; unless you find that he abandoned the difficulty, and in which event his right of self-defense would return." The remainder of this charge was a limitation upon the testimony of certain witnesses as to the particular purpose for which it was introduced. It is unnecessary to notice that. We are of the opinion that this qualification or additional charge given by the court qualifying that asked by the defendant was wrong. Of course, if appellant went to where Finley was and killed him simply because he was on his premises and would not go off as demanded by appellant, self-defense would not be an issue in the case. But this charge was given by the court as a limitation on self-defense from appellant's standpoint that deceased raised the difficulty and provoked the occasion and brought it about. We believe this was error. There had been trouble between the parties, and the deceased had been ordered to refrain from coming on the premises of the appellant. On this occasion he was going through appellant's field in direct disobedience of the express wish and injunction of appellant, and had no right on appellant's premises. Appellant went to him, under all the evidence, and demanded that he leave. The deceased cursed appellant at the time, from his standpoint, and did not from the standpoint of the State. Appellant went to the head of the team and stopped it, and it was then that appellant's testimony shows deceased cursed him. Appellant had the right to go to him armed, and demand that he leave his premises and get off. He had no right in appellant's field, and ap-

pellant was within his rights, legal and otherwise, up to this point. If there was a provocation that brought about the difficulty, it was on the part of the deceased. He went not only unbidden upon the premises of appellant but in direct contravention of his express will and order, and appellant had the right to demand his departure. Appellant was not provoking the difficulty by going to the deceased and demanding of him to leave his premises. If appellant provoked the difficulty, there is no question in the case, if that issue was in the case, that he ever abandoned it; the State's testimony does not so show. We are of the opinion under this condition of the record that the restrictions placed upon appellant's right of self-defense in the charge given by the court was wrong. Appellant had the right to have his self-defense given without this, and if there was any raising of the difficulty or provocation for it or bringing it about or producing the occasion, it was by the deceased going upon the premises of appellant under the circumstances detailed by the witnesses. This qualification of defendant's charge should not have been given, and we are of the opinion it was of such an erroneous nature as requires a reversal of the judgment.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*