## GEORGE BURKHARDT V. THE STATE.

### No. 4855.   Decided April 3, 1918.

**1.—Murder—Deputy Sheriff—Officer—De Facto Officer.**

Where, upon trial of murder, the evidence showed that the homicide grew out of the attempted arrest of defendant by the deceased, who was a deputy sheriff, and defendant claimed upon trial that the deceased at the time of the homicide was not an officer and that the attempted arrest was illegal and was an assault justifying defendant to resist, etc., but the record showed that deceased had been appointed, although such appointment could not be found on file after diligent search and was therefore proved orally, which under the circumstances was permissible, there was no error in overruling defendant's objections to such testimony. Besides, the record showed that the deceased was an officer de facto. Following Hull v. State, 50 Texas Crim. Rep., 607, and other cases.

**2.—Same—Right to Arrest Without Warrant.**

Under article 262, C. C. P., where the offender is about to escape in a case of felony and there is no time to procure a warrant, a peace officer may arrest without it. Following Cortez v. State, 47 Texas Crim Rep., 10, and other cases. And the information upon which the officer acted was a question for the jury as was the question as to whether the defendant resisted a legal arrest, and that the deceased was an officer. Following Lynch v. State, 41 Texas Crim. Rep., 510, and other cases.

**3.—Same—Knowledge of Defendant—Officer—Question of Fact—Flight.**

Whether the defendant had knowledge of the fact that deceased was an officer was a question of fact; but if the defendant was unaware of the official character of deceased, the officer not having time to disclose it, his flight would not deprive him of his right of self-defense against an effort to recapture him. Following Miers v. State, 34 Texas Crim. Rep., 161, and other cases.

**4.—Same—Right of Arrest—Stolen Property.**

Where, upon trial of murder, it was disclosed that deceased, who was an officer, attempted the arrest of defendant at the time of the homicide to prevent the consequences of theft and to seize personal property which had been stolen, he was authorized to make such arrest even though he was not an officer, under article 376, Vernon's C. C. P. Following English v. State, 34 Texas Crim. Rep., 190, and other cases.

**5.—Same—Excessive Force—Charge of Court.**

Where, upon trial of murder, it was shown by the evidence that the homicide grew out of an attempted arrest by deceased of defendant, and raised the issue of excessive force touching the acts of deceased and others, and defendant in resisting such arrest, the court properly submitted this issue to the jury, and so far as the correctness of said charge was challenged by defendant's objections thereto, there was no reversible error. Following Condron v. State, 69 Texas Crim. Rep., 513.

**6.—Same—Evidence—Confessions—Arrest.**

Where, upon trial of murder growing out of an arrest or attempt to arrest after a theft was committed, the complaint of defendant that the State was permitted to prove by the sheriff after the arrest without warning that defendant confessed to the theft or burglary can not be sustained, because the fruits of the theft were found as confessed, and the evidence of such confession was material in the homicide case in that it tended to show motive and to rebut the defendant's theory of defense that the fatal shot was fired by him with no intent to kill the deceased.

**7.—Same—Evidence—Telephone—Conversation—Hearsay.**

Evidence of the conversation with the sheriff over the telephone with a third party, who claimed that before the attempted arrest of defendant by deceased, at the request of the latter with the sheriff about the propriety of arresting defendant, was hearsay and inadmissible.

**8.—Same—Provoking Difficulty—Charge of Court.**

Where, upon trial of murder, the evidence showed that the homicide grew out of the attempted arrest of defendant by the deceased and others whose prior relations with the defendant were friendly, and that the fatal shot was fired in defendant's attempt to escape arrest, and the evidence did not raise the issue of provoking the difficulty, it was reversible error to charge on this phase of the law. Following Reese v. State, 49 Texas Crim. Rep., 242, and other cases.

**9.—Same—Rule Stated—Self-defense—Provoking Difficulty.**

Where the issue of self-defense is raised and submitted, its limitation by a charge of the court upon provoking the difficulty without evidence to justify it, has uniformly been held prejudicial error requiring a reversal. Following Humphreys v. State, 73 Texas Crim. Rep., 433, and other cases.

Appeal from the District Court of Comal. Tried below before the Hon. M. C. Jeffrey.

Appeal from a conviction of murder; penalty, fifty years imprisonment in the penitentiary.

The opinion states the case.

*Adolph Seideman* and *W. W. Burnett,* for appellant.—On question of authority of deputy sheriff to make arrest: Cortez v. State, 69 S. W. Rep., 536; Earles v. State, 94 id., 464; Mundine v. State, 38 id., 619; Scott v. State, 93 id., 112; Hardin v. State, 49 id., 607.

On question of self-defense in resisting unlawful arrest: Carter v. State, 37 Texas Crim. Rep., 403; Maxwell v. State, 31 id., 119; Recon v. State, 58 id., 457.

On question of other offenses: Cortez v. State, 69 S. W. Rep., 536.

On question of excessive force in making arrest: Owen v. State, 58 Texas Crim. Rep., 261.

On question of illegal arrest: Alford v. State, 8 Texas Crim. App., 545.

On question of provoking difficulty: Day v. State, 62 Texas Crim. Rep., 413; Johnson v. State, 13 Texas Crim. App., 378.

On question of proving appointment of deputy sheriff by oral testimony: Brown v. State, 66 S. W. Rep., 547, and cases supra.

On question of charge of court as to de facto officer: Luera v. State, 12 Texas Crim. App., 257; Brown v. State, 66 S. W. Rep., 547.

On question of resisting unlawful arrest: Alford v. State, 8 Texas Crim. App., 545, and cases stated in opinion.

On question of declarations of third parties: Owens v. State, 43 Texas Crim. Rep., 249; Wright v. State, 37 id., 627; Barry v. State, 37 id., 302.

On question of defendant's confession: Miers v. State, 34 Texas Crim. Rep., 161; Woodward v. State, 42 id., 188; Ware v. State, 49 id., 413.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant was convicted of the murder of Alfred Fischer. The punishment was assessed at confinement in the penitentiary for fifty years.

The homicide grew out of the arrest of appellant. The deceased was a deputy sheriff. The homicide took place on the 10th of March, 1917. In December preceding the house of one Leuders was burglarized and watch and chain stolen. On the day of the homicide and a short time before the killing the appellant was found by deceased in possession of the watch, which was identified by the owner and his wife, who were present. The sheriff instructed deceased to arrest appellant and release him on bail, otherwise to bring him to the county seat. The deceased told appellant that he would have to arrest him unless he gave bond. Appellant attempted to give bond but failed. Deceased endeavored to assist him. According to the State's evidence appellant started to walk away fast; deceased followed him, laid his hand on his shoulder, and said that he would have to arrest him and take him to New Braunfels. Appellant said he would not be arrested, and in the difficulty immediately following three shots were fired, one of which, according to the State's theory, entered the leg of deceased and another his breast, producing a mortal wound. One Schlameus was present and claimed that after the first shot was fired he took hold of appellant and appellant ran, and as he ran Schlameus struck him with his fist. Appellant was pursued by the deceased and several parties who were present, including Leuders, the owner of the stolen property. As appellant was fleeing deceased fired at him. Leuders, according to his testimony, was in front of deceased, and after appellant had run about one hundred yards in the direction of some brush near the end of the bowling alley, Leuders, according to his statement, spoke to appellant, who turned half around and fired two shots in the direction of his own head. Appellant fell on the ground at once after these two shots were fired and at the same time deceased came up. Deceased's brother also came and said to deceased that he was afraid that he had killed appellant. Deceased said, "No, he has killed me," and pulled back part of his coat to exhibit the wound. He immediately fell and died. Appellant claimed that after he had failed to induce his cousin to sign his bond, he sought permission to see his father, but that deceased and Schlameus took him back into the corner of the saloon and one of them grabbed each of his hands, and that as his left hand was grabbed he drew it out of his pocket with his pistol and fired a shot; that a struggle followed and he fired two more shots; that he was struck a lick by someone, managed to get loose and run for fear they would kill him; that while running he heard a shot fired, which he supposed was fired at him; that he ran around the corner and alongside of the bowling alley, and before he got to the other corner saw a person with a gun drawn on him, and he raised up and fired a shot at him, and just then he stumbled and as he hit the ground one shot was fired, by whom he did not know, and he then became unconscious. He says he did not know who the man was at the

corner that he shot at, but that he fired because he was presenting a gun and he was afraid of losing his life. A doctor reached the scene a few moments later and found deceased, Fischer, in a dying condition from the wound that entered his breast. Appellant had scalp wounds on his head, apparently bullet wounds. There were four holes. Another doctor who examined appellant later said there were three wounds on the head, one of a different nature from the other two; that he removed part of a shell upon the head; that the outer bone of the skull was broken. Appellant claimed that when he was struck at the time of the scuffle he was hit with something hard, and his theory was that one of the wounds on his head was caused by this blow. The State's theory was that all of them were self-inflicted. Appellant claimed that he was in possession of the pistol for self-protection, and that as he could use it practically as well with his left as with his right hand, he carried it in his left side pocket because it was likely that in the event of attack that his right hand would be first disabled.

The court submitted the issues of murder, manslaughter, illegal arrest and self-defense. Appellant, through special charges, objections to the court's charge, and to the introduction of evidence, raises numerous questions touching the law of arrest as applied to the case. He claims that deceased was not an officer, and that the attempted arrest, being illegal, was an assault justifying his acts in firing his pistol at the time of the struggle. He claims, however, that the shots fired by him were not intended to kill but to induce his release.

It appears that deceased had been acting as deputy sheriff for a number of years. That the sheriff, who was in office at the time of the homicide, had appointed him during the previous term, and that his written appointment was found in the clerk's office. There was no written appointment during the subsequent term, though the sheriff testified he continued to act as deputy sheriff, and that he had in fact appointed him, though he has not filed his oath as required by law. Objection was made to proof of the subsequent appointment on the ground that the writing was not sufficiently accounted for. In view of the clerk's testimony introduced by the State showing search for the document, we do not think the record shows error in this respect. There were a number of witnesses who testified that the deceased had been acting as deputy sheriff in the neighborhood of the homicide, which was remote from the county seat, for six or seven years, and was generally recognized by the public as an officer there. The fact of his so acting and the other circumstances mentioned in connection with his appointment, we think, was sufficient to sustain the finding that he was an officer de facto. Ex parte Tracey, 93 S. W. Rep., 538; Hull v. State, 50 Texas Crim. Rep., 607; Weatherford v. State, 31 Texas Crim. Rep., 530; Brumby v. Boyd, 66 S. W. Rep., 874; 29 Cyc., 1374-1389; Branch's Ann. P. C., sec. 1978.

Article 262, C. C. P., is as follows: "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to

escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the person accused."

We think under this statute with the information that the deceased had he was authorized to arrest the appellant. Cortez v. State, 47 Texas Crim. Rep., 10; Hill v. State, 37 Texas Crim. Rep., 415. What information he had received was a question for the jury. In passing upon the question raised as to whether appellant was resisting a legal arrest, his knowledge of the fact that the deceased was an officer was an element. In other words, unless it was shown that appellant knew the capacity in which the deceased was acting and his ground for the arrest the appellant was not bound to submit to the arrest without warrant. Lynch v. State, 41 Texas Crim. Rep., 510; Tiner v. State, 44 Texas, 128; Mooney v. State, 65 S. W. Rep., 926; Cortez v. State, 43 Texas Crim. Rep., 375, and other cases cited in Branch's Ann. P. C., sec. 1116. Appellant was a life-long resident of the community in which the officer acted, and whether appellant had knowledge 'of the fact that he was an officer was a question for the jury. If appellant was unaware of the official ·character of the deceased, the officer not having time to disclose it, appellant's flight would not deprive him of the right to defend against an effort to recapture him. Miers v. State, 34 Texas Crim. Rep., 161; Tiner v. State, 44 Texas, 128; note 66 L. R. A., 372; State v. Phillips, 118 Iowa, 660.

There is another statute, however, under which the facts as to the theft, being found as claimed by the State, the arrest of appellant would have been authorized without reference to the status of deceased as an officer. We refer to article 376, Vernon's C. C. P., as follows: "All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay." English v. State, 34 Texas Crim. Rep., 190; Porez v. State, 29 Texas Crim. App., 618.

The law of excessive force touching the acts of the deceased and those with him in making the arrest, and of the defendant in resisting it was, we think, involved. Alford v. State, 8 Texas Crim. App., 545; Condron v. State, 69 Texas Crim. Rep., 513, 155 S. W. Rep., 253; Branch's Ann. P. C., sec. 1980. These matters were dealt with in the charge of the court in a manner sufficient so far as its correctness is challenged by the objections made. There are some inaccuracies of which complaint was not made.

The complaint that the State was permitted to prove by the sheriff, after the arrest without warning, that appellant confessed the burglary, can not be sustained. He was under arrest for both the burglary and the homicide. The sheriff's testimony was to the effect that he confessed that he took the watch and at the same time a chain, giving the locality of this chain, upon which information the chain was found at the place designated by appellant. These circumstances rendered the

confession admissible if material in this case. Branch's Ann. P. C., sec. 63. The evidence was, we think, material in the homicide case in that it tended to show motive and to rebut the appellant's theory and testimony that the shots fired at the time of the arrest were fired with no intent to injure or kill the deceased. The State's theory was that appellant determined to resist arrest, and fired the fatal shot immediately after the deceased laid his hand upon him. The defendant's theory and testimony tended to show that the three shots which he fired at that time, or during the struggle, were not fired at the deceased, or at least that none of them were fired at his breast, where the fatal wound was inflicted, but that that wound was given deceased at the time that he intercepted appellant in his flight and presented a pistol with which appellant believed the deceased intended to kill him. The fact that appellant was conscious of having committed the crime of burglary, and part of the stolen property was under his dominion, though not upon his person, might tend to aid the jury in solving the controverted question as to his intent in firing the shots at the time of the struggle.

The evidence of a conversation with the sheriff over the telephone, which was testified to by a witness who claimed that before the arrest he, at the request of the deceased, talked with the sheriff about the propriety of arresting appellant, we are inclined to think was obnoxious to the rule of hearsay.

The court concluded, doubtless correctly, that the facts required him to charge the law of murder, manslaughter and self-defense. The court qualified the charge on self-defense; in effect, informed the jury that if appellant killed deceased to prevent serious bodily injury to himself, and quoting, "if you do not believe from the evidence, beyond a reasonable doubt, that the defendant wilfully and intentionally provoked said difficulty, if he did provoke it, for the purpose of using unlawful violence upon Alfred Fischer," then they would find that the homicide was not unlawful. Exception was reserved in a proper and timely manner. The right of self-defense is qualified under the law of provoking the difficulty, where the jury finds beyond a reasonable doubt that the accused intended to provoke the difficulty for the purpose of causing the deceased to attack and thereupon to kill or do him serious bodily harm, and that in pursuance of such intention he used means reasonably calculated under the circumstances to bring about that result, and that a demonstration or attack upon him by the deceased was so brought on, and that the injury to the deceased was inflicted in pursuance of such original design to kill or to do serious bodily injury. Branch's Ann. P. C., art. 1134, and cases cited; Young v. State, 53 Texas Crim. Rep., 416, 110 S. W. Rep., 445; Vernon's C. C. P., 459; Wharton's Crim. Ev., 604; Ruling Case Law, vol. 13, p. 831, secs. 136-137; McDougal v. State, 79 Texas Crim. Rep., 254, 185 S. W. Rep., 15.

This homicide appears to have grown out of the arrest of appellant, or his attempted arrest by the deceased and others. Their prior relations were friendly. From the evidence of both the State and the appellant it appears that the deceased and others attempted to arrest

appellant, or did arrest him and after his escape attempted to recapture him, and that in one of the phases of the transaction the fatal shot was fired. We find nothing in the case, and counsel has pointed out nothing, which authorizes the submission to the jury of the issue of provoking the difficulty, and we think the court was in error in presenting that theory to the jury. Reese v. State, 49 Texas Crim. Rep., 242; Burnett v. State, 51 Texas Crim. Rep., 20; Smith v. State, 48 Texas Crim. Rep., 203; Morgan v. State, 34 Texas Crim. Rep., 222; Martinez v. State, 81 Texas Crim. Rep., 627. This phase of the charge was probably harmful to the appellant, both as to his theory of manslaughter as a defense against murder, and to his claim of self-defense. It was calculated to suggest to the minds of the jury and to impress them with the view that, in the opinion of the trial court, there was evidence which justified them in concluding that the appellant, before the transaction, formed the intent to injure the deceased and wilfully shaped his conduct to provoke the deceased into attacking him that he might carry out his intent. Where the issue of self-defense is raised and submitted, its limitation by a charge on provoking the difficulty, without evidence to justify it has uniformly been held prejudicial error, requiring a reversal. Thomas v. State, 40 Texas, 36; Humphreys v. State, 73 Texas Crim. Rep., 433, 165 S. W. Rep., 589; Lockhart v. State, 53 Texas Crim. Rep., 589; Cook v. State, 43 Texas Crim. Rep., 182; McCandless v. State, 42 Texas Crim. Rep., 58; Colter v. State, 37 Texas Crim. Rep., 284; Gilcrease v. State, 33 Texas Crim. Rep., 619; Jones v. State, 17 Texas Crim. App., 602. Numerous cases listed in Branch's Ann. P. C., sec. 1955.

The judgment of the lower court is reversed and the case remanded.

*Reversed and remanded.*