## A. O. CONDRON v. THE STATE.

### No. 1223.  Decided May 31, 1911.

**1.—Murder—Charge of Court—Theory of Defense.**

Where, upon trial of murder, defendant's contentions were that his codefendant was justified in killing the deceased, and secondly, that he did not aid by acts or encourage by words the said codefendant in the homicide, his theory of defense should have been submitted to the jury.

**2.—Same—Charge of Court—Weight of Evidence—Principals.**

Where, upon trial of murder, it was a question in the case whether defendant's codefendant was an offender and that the defendant did not do the actual killing, it was reversible error in the court's charge on principals to assume that said codefendant unlawfully killed the deceased.

**3.—Same—Charge of Court—Principals.**

While the court properly defined principals but did not instruct the jury that even if they believed defendant's codefendant guilty of an unlawful homicide, that the defendant could not be guilty, although present if he did not encourage the commission of the offense which was an issue by the evidence, the same should have been submitted as requested.

**4.—Same—Charge of Court—Different Motives.**

Where, upon trial of murder, defendant's whole theory of defense was that his codefendant was justifiable in the homicide or that if he was not, defendant was not acting with him, there was no reversible error in the court's failure to charge on defendant's motive or condition of mind in differentiation of said codefendant's condition of mind.

**5.—Same—Charge of Court—Manslaughter—Officers—Warrant of Arrest.**

Where, upon trial of murder, the charge of the court on manslaughter, etc., taken as a whole, on the question of the officer's right to arrest and defendant's resistance thereto was according to precedent, there was no error. Following Miller v. State, 32 Texas Crim. Rep., 319.

**6.—Same—Charge of Court—Self-Defense.**

Where, upon trial of murder, the court's charge on self-defense clearly presented the law as applicable to the facts, there was no error. Following Newcomb v. State, 49 Texas Crim. Rep., 50.

**7.—Same—Evidence—Warrant of Arrest.**

Upon trial of murder there was no error in admitting in evidence the warrant for the arrest of the defendant, although the same was inartistically drawn; besides, the officer had a right to arrest defendant for carrying a pistol without warrant.

Appeal from the District Court of Haskell. Tried below before the Hon. Cullen C. Higgins.

Appeal from a conviction of murder in the second degree; penalty, thirty years imprisonment in the penitentiary.

The opinion states the case.

*Cunningham & Oliver* and *Helton & Murchison* and *Ben Reynolds* and *Goodson & Goodson,* for appellant.—On the question of the court's charge on self-defense: Phipps v. State, 34 Texas Crim. Rep., 608, 31 S. W. Rep., 657; Brady v. State, 65 S. W. Rep., 521; Hill v. State, 10 Texas Crim. App., 618; Hall v. State, 42 Texas Crim. Rep., 444, 66 S. W. Rep., 783; McCandless v. State, 57 S. W. Rep., 672; Winn v. State, 54 Texas Crim. Rep., 538, 113 S. W. Rep., 918; Moss v. State, 59 Texas Crim. Rep., 68, 126 S. W. Rep., 1150.

On question of arrest and self-defense: Jones v. State, 26 Texas Crim. App., 1, 9 S. W. Rep., 53; Hardin v. State, 49 S. W. Rep., 607; Ex parte Sherwood, 29 Texas Crim. App., 234, 15 S. W. Rep., 812.

On question of the court's charge on murder in the second degree and manslaughter: Whitaker v. State, 12 Texas Crim. App., 436; Harrison v. State, 47 Texas Crim. Rep., 393, 83 S. W. Rep., 699; McDowell v. State, 55 Texas Crim. Rep., 596, 117 S. W. Rep., 831.

As to question of difference of intent: Leslie v. State, 42 Texas Crim. Rep., 65, 57 S. W. Rep., 659; Guffee v. State, 8 Texas Crim. App., 187; Beckham v. State, 69 S. W. Rep., 534.

Upon question that defendant was entitled to an affirmative charge on his defenses: McAlister v. State, 59 Texas Crim. Rep., 237, 128 S. W. Rep., 123; Moore v. State, 59 Texas Crim. Rep., 361; id., 1115; Tilmyer v. State, 58 Texas Crim. Rep., 562, 126 S. W. Rep., 870; Berry v. State, 58 Texas Crim. Rep., 291, 125 S. W. Rep., 580; Tankersley v. State, 51 Texas Crim. Rep., 224, 101 S. W. Rep., 234.

On question of admitting in evidence warrant of arrest: Fulkerson v. State, 43 Texas Crim. Rep., 587, 67 S. W. Rep., 502; Thomas v. State, 51 Texas Crim. Rep., 329, 108 S. W. Rep., 664.

*C. E. Lane,* Assistant Attorney-General, and *Jas. O. Stinson,* District Attorney, and *T. J. Wright* and *Jas. P. Kinnard* and *Taylor,* for the State.—On the court's charge on principals: Sessions v. State, 37 Texas Crim. Rep., 58; Wilkerson v. State, 57 S. W. Rep., 956; Criner v. State, 53 Texas Crim. Rep., 174, 109 S. W. Rep., 128; Greathouse v. State, 53 Texas Crim. Rep., 218; id., 165; Cordona v. State, 53 Texas Crim. Rep., 619, 111 S. W. Rep., 145; Russell v. State, 53 Texas Crim. Rep., 500; id., 658; Barton v. State, 53 Texas Crim. Rep., 443; id., 1042.

HARPER, JUDGE.—Appellant was indicted for murder alleged to have been committed in Throckmorton County. Upon a change of venue he was tried at Haskell County, Texas, found guilty of murder

in the second degree, and his punishment assessed at thirty years confinement in the State penitentiary.

On the first day of last October appellant was at Overcash's feed store in Throckmorton, and spent the afternoon at the store and wagon yard. He and Overcash, it appears, were drinking. During the afternoon appellant and Charlie Jones had an altercation, and appellant got a pistol out of a coat hanging on the wall, and while in his hands it was discharged. The State's witnesses contend that appellant shot between Jones' feet to make him jump and dance. Appellant insists that the shot was accidental, and that the pistol was not pointed in the direction of Jones. Jones reported to the officers that appellant was at Overcash's armed with a pistol, and swore to a complaint before Justice Rogers. Mr. Rogers delivered the warrant to Mr. Spurlock, sheriff of the county. While this was being done Devall, whose team was at the wagon yard, returned to the store and informed appellant and Overcash that he had seen the officers "stirring about the court-house," and there must be something doing, when appellant remarked, "You must be next." Sieb Jones says he told appellant that "Charlie Jones was making a hell of a talk about him (appellant), and he would not be surprised if he had him (appellant) arrested," and he told him to be quiet. Appellant replied he "would take care of himself, and that his boy could take care of the rest of them." About the time these conversations were taking place Sheriff Spurlock, to whom the writ for appellant's arrest had been delivered, and his deputy, Nichols, were seen to come out of the courthouse and start in the direction of Overcash's store, when appellant remarked, "There comes the G—d d—n sons-of-bitches now," and he and Overcash left the gallery and went in the store. The testimony for the State shows intense ill-will on the part of both Overcash and Condron towards the sheriff, with whom on more than one occasion they had had trouble. Both, it is shown, had made threats. The sheriff had arrested Overcash on two occasions, and at one time the sheriff had drawn his pistol on him, and Overcash was very bitter. Appellant had been compelled to pay a fine, and he said he would not be again arrested, but would "sell out," when it was undertaken. These men were drinking when they would make these threats. When the sheriff and his deputy got near the store (from the State's standpoint), the sheriff told appellant he had a warrant for his arrest, when Overcash said, "Don't come another damn step," and appellant remarked, "By God, get away from here with it." As these remarks were made the shooting began. The State contends that Overcash used a shotgun and fired the first shot; that appellant used a pistol and fired three or four times. The officers returned the shots, and appellant was shot in the leg. The sheriff was killed by Overcash, no pistol ball striking him. Appellant in his testimony insists he did not fire a shot. He admits that he said, "Yonder comes the sons-of-bitches," but says he did not recognize the sheriff, but thought it was Charlie Jones returning with

the deputy, who was a. brother-in-law of Jones. That when he recognized the sheriff he made no further remarks. That he was never told by the sheriff that he had a warrant for his arrest, but when the sheriff got near the store the sheriff placed his hand on his pistol, and Overcash grabbed his shotgun and stepped towards the door, when he (appellant) said, "My God, men, don't do that." That the sheriff and his deputy began to shoot, when Overcash returned the fire. Appellant says he had no pistol; that he was hit by the first shot and fell. After he says he was shot down he got a pistol out of a desk and tried to shoot, but it would not fire. That there was no agreement between him and Overcash to resist the officers and he took no part in killing Sheriff Spurlock, and that, while he was present, he did not aid or abet Overcash, but tried to prevent the shooting. He admits making the remarks about the sheriff on different occasions testified to by witnesses, but says he was drinking at the time, and claims that in fact he had nothing against the sheriff.

The testimony would amply support the verdict of the jury, and under the evidence for the State the jury was authorized to find that appellant in law was a principal with Overcash, and under this theory it would be immaterial who fired the fatal shot. But under our laws appellant had a right to have his theory of the case submitted to the jury. Appellant's contentions were, first, that Overcash was justified in killing Sheriff Spurlock, and if it was found he aided and abetted him he would not be guilty of any offense; second, that he did not aid by acts, nor encourage by words, Overcash to kill; in fact, if Overcash was guilty, he (appellant) was not a principal in the killing.

1. Appellant complains of the following paragraph of the court's charge to the jury:

"If you believe from the evidence in this case that the defendant did not engage in the shooting, if any, between Spurlock and Nichols upon the one side, and W. J. Overcash upon the other, nor participate in the acts of W. J. Overcash as a principal offender, until after the defendant was first fired upon or until he was wounded by said Spurlock or Nichols, and that he procured a weapon and then fired, or attempted to fire at either or both the said Spurlock and Nichols, he would not be guilty of an offense, and if you so believe, or have a reasonable doubt thereof, you will acquit him."

Appellant insists that this was a charge upon the weight of the evidence, and we are inclined to think his contention is correct. It was a question in the case from all the evidence whether Overcash, with whom appellant is alleged to have acted, was an offender, appellant contending that Overcash acted in self-defense, and was not guilty of any offense. The evidence showed beyond question that it was the shotgun fired by Overcash that killed Spurlock. Appellant would not be guilty, under any phase of the case, unless Overcash was guilty under the evidence of some grade of homicide. While the trial court may have concluded the evidence showed that Overcash was guilty of

an offense, yet the judge can not so assume in his charge under our law. If the evidence raises the issue, without reference to its strength or weakness, it must be submitted to the jury for their determination, and it was error for the court in this paragraph to assume that Overcash was an offender, and unlawfully killed Spurlock. This would leave the sole question to be passed on by the jury as to this appellant, Did he aid or abet Overcash, or did he encourage by words or gestures?—for there is no question of his presence at the time.

The court properly defined who are principals in the commission of an offense as applicable to this case, but in no portion of the charge does he instruct the jury that even if they believe Overcash was guilty of an unlawful homicide, yet, although appellant was present, if he did not encourage Overcash in the commission of the offense, and did not aid and abet him, appellant would not be guilty. Appellant in his testimony raised this issue, for he says he told him, "My God, men, don't do that." He claims he was not armed, and did nothing until after he was shot and Spurlock had received the fatal wound. Upon this testimony his contention should have been submitted to the jury.

2. Appellant prepared and submitted the following special charge, with the request that it be given:

"You are instructed that if the proof shows in this case that W. J. Overcash killed the deceased Spurlock, then before you would be authorized to convict this defendant of any grade of culpable homicide you must find from the evidence beyond a reasonable doubt that the said W. J. Overcash unlawfully killed the deceased, Spurlock, and that the defendant was present, and knew of the unlawful intent on the part of W. J. Overcash, and so knowing, aided him by acts, encouraged him by words or gestures, to kill the said Spurlock, and in that connection you are charged that the mere presence of the defendant in company with the said Overcash will not be sufficient to establish the defendant's guilt, but the proof must go further, and establish beyond a reasonable doubt that said W. J. Overcash unlawfully killed the deceased, and that the defendant, knowing the unlawful intent of the said Overcash to kill the said Spurlock, aided and abetted him in said killing, and if you have a reasonable doubt as to the existence of any one of the above propositions, you will acquit the defendant."

This charge should have been given, as presenting defendant's theory of the case. Under our decisions he was entitled to an affirmative charge on the issue of his defense, when he requests it.

3. Appellant also insists that the court in his charge predicated the guilt of appellant, and the degree of offense that he would be guilty of, on the motive and condition of the mind of Overcash, and not appellant's own motive or condition of mind, and cites us to the cases of Red v. State, 47 S. W. Rep., 1003, and Leslie v. State, 42 Texas Crim. Rep., 65, 57 S. W. Rep., 659, and authorities there referred to. Where the evidence raises the issue of a different motive, or suggests a different state of mind, it would be proper for the court to so frame

the charge as to meet that issue. However, in this case we do not think the evidence raises an issue of a different motive or condition of mind as between appellant and Overcash, or if the jury should find under a proper charge that he was a principal. Appellant's whole theory is that Overcash was justifiable in the homicide, and in consequence he can not be guilty of any offense; or if Overcash is guilty, he was not acting with him nor was he aiding, abetting or encouraging him in the commission of the offense. In the case of Cordes v. State, 54 Texas Crim. Rep., 204, 112 S. W. Rep., 947, this court holds:

"On the doctrine of principals the court charged as follows: 'Or that by such means and at such time and place Eilert Cordes did unlawfully and with express malice kill said infant, and that when the said Eilert Cordes so killed said infant the defendant was present, and had agreed with the said Eilert Cordes to so kill said infant, or that she was present when the said Eilert Cordes so killed said infant (if he did so), and knowing his unlawful intent, did aid him by acts or encourage him by words or gestures in so killing said infant, you, will find defendant guilty of murder in the first degree, and assess her punishment at death or confinement in the penitentiary for life, in your discretion.' Appellant insists said charge is erroneous, in that it did not require her to have express malice at the time she agreed with the said Eilert Cordes to kill said infant, nor did it require her to have express malice at the time she aided him by acts or encouraged him by words or gestures in so killing said infant. The charge, we hold, shows clearly a proper presentation of this question. Furthermore, we can not isolate this clause from the balance of the charge; but the court properly charged all the law applicable to the facts of this case, telling the jury that appellant must aid by words, acts or gestures, and be present at the time of the commission of the offense, knowing the unlawful intent of the said Eilert Cordes."

The charge in this case presents the law as there held to be correct, and in this we do not think there is any conflict between it and the cases cited by appellant.

In Red v. State, 47 S. W. Rep., 1003, supra, it is said: "So the general rule would seem to be that the guilt of the principal in the second degree, or one aiding the doer of the act, is measured by the intent of the one actually committing the offense. In order to measure this intent, the law measuring and defining the intent of the actor or doer, it occurs to us, should be properly given; the statute being, if a person present, knowing such unlawful intent, aids the doer thereof by acts, etc., he is guilty with the same intent and purpose. If in a particular case the actual doer of felonious homicide, and the aidor or abettor guilty of another degree, the case should be properly presented to the jury as to the person actually committing the offense, embracing his or her intent, and then the jury should be instructed that if appellant, knowing such intent of the actual committer of the offense, entered into it, and aided such doer, with some other intent

on his part of a greater or less degree, to find him guilty and assess his punishment accordingly."

Each case must be presented in the light of the evidence, for, as said in the Red case, the general rule is, the guilt of one aiding the doer of an act is measured by the intent of the one actually committing the offense, and it is only when the evidence suggests a different condition of mind or motive, that the court is required to present the theory that he is to be tried in accordance with the intent with which he may have participated. As the evidence in this case, as developed on this trial, does not suggest that a different motive or intent may have actuated appellant, if he is guilty as a principal, there is no error in this matter of which he can complain. If, however, on another trial the evidence suggests that appellant, if guilty, acted from a different motive or intent, or was laboring under a different condition of mind, then the charge should be so framed as to meet the contingency.

4. The other assignments complaining of other paragraphs of the charge, when read as a whole, we do not think present any error. The charge on manslaughter and the rights of defendant in case the officers notified him that they had a warrant for his arrest, and he by his wrongful acts in resisting an arrest brought about the difficulty, is in accordance with the law as laid down in Miller v. State, 32 Texas Crim. Rep., 319 to 352.

5. The different paragraphs of the court's charge on self-defense clearly present the law as applicable to this case, except insofar as the thirty-second paragraph hereinbefore referred to is criticised, and this, strictly speaking, is not a part of the charge on self-defense, but is stating a condition under which appellant would not be a principal with Overcash in the commission of the offense, if one was committed. Newcomb v. State, 49 Texas Crim. Rep., 550; Miller v. State, 32 Texas Crim. Rep., 319.

6. Neither was there error in admitting the warrant for the arrest of appellant in evidence. It may have been inartistically drawn, yet it is shown to have been issued by an officer authorized to issue warrants, by him delivered to the sheriff, and was in his possession when he sought to make the arrest, if he did do so. Of any defects therein, if any, appellant was not apprised, and could not justify his conduct thereunder. In addition, if Jones had informed the sheriff that appellant was unlawfully carrying a pistol, under the article of the Code relating to arrests for this offense, the sheriff would have been authorized to make the arrest, and the sheriff would be in no wrong in seeking to arrest appellant under the evidence in this case, but for the errors above pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*