## A. O. CONDRON v. STATE.

### No. 2196. Decided March 5, 1913.

### Rehearing denied April 2, 1913.

**1.—Murder—Charge of Court—Manslaughter.**

Where, upon trial of murder, the defendant was convicted of manslaughter, receiving the lowest penalty, the charge on murder need not be considered and that on manslaughter, although slightly inaccurate, was not cause for reversal.

**2.—Same—Argument of Counsel.**

Where the criticisms of the argument of counsel in the light of the qualifications by the court were untenable, there was no error.

Vol. LXIX Crim.—33.

**3.—Same—Charge of Court—Weight of Evidence.**

Where the court's charge was but a statement of a proposition of law if the jury found a given state of facts, the same was not on the weight of evidence.

**4.—Same—Charge of Court—Carrying Pistol—Officer—Right to Arrest.**

Where, upon trial of murder, the evidence showed that shortly before the homicide the defendant had a difficulty with a third party during which he reached for his pistol and fired it, and a warrant was placed in the hands of the deceased who was sheriff and his deputy for the arrest of defendant for carrying a pistol, and who approached him with said warrant to arrest him when the difficulty arose in which deceased was killed by defendant's companion, there was no error in the court's charge that if defendant was unlawfully carrying a pistol that he was subject to arrest by deceased or any of his deputies, and such charge did not assume the fact that the defendant was carrying a pistol and was proper under the law and facts of the case. Article 479, Penal Code. Following Jacobs v. State, 28 Texas Crim. App., 79, and other cases. Davidson, Presiding Judge, dissenting.

**5.—Same—Charge of Court—Reasonable Doubt—Charge as a Whole.**

Where the court charged that the burden rested on the State to establish the guilt of the defendant beyond a reasonable doubt, etc., or else to acquit him, but if the evidence satisfied the jury beyond a reasonable doubt of the guilt of the defendant, to convict him of that degree of the offense of which he was guilty, this could not mislead the jury that the court believed there was no reasonable doubt as to defendant's guilt, when taken in connection with other portions of the charge that defendant was not only entitled to the benefit of a reasonable doubt on the whole case, but as between the degrees of the homicide committed, and there was no error   Distinguishing Comegys v̄. State, 62 Texas Crim. Rep., 231. Davidson, Presiding Judge, dissenting.

**6.—Same—Charge of Court—Manslaughter—Presumption of Innocence— Reasonable Doubt.**

The law requires the jury to find the facts affirmatively before they are authorized to convict of any degree of offense, and the doctrine of reasonable doubt need not be appended to each paragraph of the charge of the court if the same as a whole properly instructs the jury on that issue, and where the court not only instructed upon the reasonable doubt on the whole case, but on the different degrees of homicide, the defendant is not denied the presumption of innocence and the benefit of the reasonable doubt.

**7.—Same—Charge of Court—Manslaughter—Conflict in Charge—Self-defense.**

Where, upon trial of murder, the court submitted a charge on manslaughter as well as one on self-defense, and the evidence showed that the homicide grew out of an attempted arrest by the deceased and his deputy who were sheriffs, and the court correctly drew the line of distinction as to when the acts of deceased in attempting the arrest of defendant would reduce the offense to manslaughter and when such acts would justify the killing in self-defense, there was no conflict in the said two paragraphs of the court's charge as contended by the defendant. Davidson, Presiding Judge, dissenting.

**8.—Same—Charge of Court—Presumption of Innocence—Reasonable Doubt.**

Where, upon trial of murder, the defendant criticised the court's charge on manslaughter, claiming in one instance that it took away from the defendant the benefit of a reasonable doubt, and in another that it authorized the jury to convict on a preponderance of the evidence; but when the charge, read as a whole, did neither of these things, there was no reversible error.

**9.—Same—Charge of Court—Force Used—Manslaughter—Self-defense.**

Where the defendant claimed that the court's charge on manslaughter in one instance instructed the jury that if the officers who attempted his arrest, one of whom was deceased, were using greater force than was necessary under the circumstances and this produced adequate cause to render defendant's mind incapable of cool reflection to find him guilty of manslaughter, and in

another part of the charge, instructed them that if such arrest was made in a wanton manner and the use of greater force than was necessary, the defendant would be justifiable in killing deceased, but when the charge was considered as a whole, no such conflict occurred in the court's charge, there was no reversible error. Davidson, Presiding Judge, dissenting.

#### 10.—Same—Charge of Court—Self-defense.

Where, upon trial of murder, the court's charge on self-defense presented every phase as made by the evidence and when read as a whole, is not subject to any criticisms, there was no reversible error.

Appeal from the District Court of Jones. Tried below before the Hon. Jno. B. Thomas.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Cunningham & Oliver* and *Ben Reynolds* and *Chapman & Coombes* and *Goodson & Goodson,* for appellant.—On the question of the presumption of innocence and reasonable doubt: Harris v. State, 55 Texas Crim. Rep., 469; Stuart v. State, 57 id., 592; Henderson v. State, 51 Texas Crim. Rep., 193; 101 S. W. Rep., 245; Graham v. State, 61 S. W. Rep., 714; Smith v. State, 9 Texas Crim. App., 150; Robertson v. State, 9 id., 209; Blocker v. State, 9 id., 279; Wallace v. State, 9 id., 299.

On question of reasonable doubt and court's charge of weight of evidence: Comegys v. State, 62 Texas Crim. Rep., 231; Fulkerson v. State, 67 S. W. Rep., 502; Thomas v. State, 56 Texas Crim. Rep., 66; 108 S. W. Rep., 664.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, charged with murder, and when tried was convicted of manslaughter, and his punishment assessed at two years confinement in the penitentiary.

The record discloses that appellant and deceased were rival candidates for sheriff of Throckmorton County, deceased being elected. The state of feeling between the two men was not friendly subsequent to the election. The State's evidence would disclose that appellant on several occasions made threats as to what he would do under given conditions. It also appears that appellant also bore ill-will towards Mr. Nichols, a deputy sheriff. It also appears that appellant and W. J. Overcash were friends and were together when clashes arose between them and the sheriff or his department, and that Overcash also felt unkindly towards the deceased sheriff. On the evening of the fatal difficulty appellant was at the feed store of W. J. Overcash, and he and Charlie Jones engaged in a war of words. Jones says that appellant asked Overcash, "Where is my pistol," and when Overcash told him where it was, appellant got it and fired, the ball striking near him. R. H. Barnes, who worked at the feed

store, says the pistol was not kept at the store; that they kept a shotgun there, but no pistol; that he is of the opinion the pistol belonged to Overcash. Appellant testified he asked Overcash, "Where is your pistol," and when Overcash replied he got the pistol, and while handling it let it go off accidentally. The testimony would show that Overcash and Barnes at this time took the pistol from appellant, unloaded it and locked it in a desk drawer.

Jones left the feed store and went before the justice of the peace and swore out a complaint against appellant, charging him with unlawfully carrying a pistol. The justice of the peace issued a warrant for the arrest of appellant and delivered it to the deceased sheriff, Jones telling the sheriff appellant was at Overcash's feed store. He called his deputy, Mr. Nichols, and they started to the store, ostensibly to arrest appellant on the warrant.

While Jones was gone, and after he had gone to the office of the justice of the peace, it is shown that Overcash unlocked the drawer and again loaded the pistol, placing it in the drawer, but leaving the drawer unlocked, he and appellant both being present. They then took seats on the front porch of the feed store, where the courthouse would be in plain view. While they were sitting there, L. E. Devall came to the feed store, and in a conversation remarked, "It looks like the officers are getting busy up town," when appellant replied, "You must be next." When Devall replied he knew nothing of the matter, appellant spoke to Overcash and said, "Uncle Bill, he must be next," and then appellant remarked, "Well, one thing sure, I am not going to talk to them this evening; we ran for the same office once, and he (Spurlock) may be a better man than I am in one way, but by God he ain't in any other—I won't be talked to this evening; they can talk to me Monday, but as for that G—d d—n long legged Nichols, he can't talk to me at all." Witness Devall further testified that about that time appellant remarked, "There comes the G—d d—ned s—n of b—hes now," and he, witness, looked and saw the deceased, Sheriff Spurlock, and his deputy, Mr. Nichols, coming towards the feed store. That as appellant made this remark, he and Overcash got up, left the gallery and went in the feed store.

Deputy Sheriff Nichols says as they approached the feed store they saw appellant and Overcash get up and walk in the store, and he saw appellant go to this desk, where the pistol was in a drawer, get the pistol—Overcash got a shotgun, when they both returned to the front, one getting on the righthand side and the other the lefthand side of the door, when Overcash waved his hand, and instructed them to come no closer; that the deceased sheriff then told Condron he had a warrant for his arrest, and the shooting began, Overcash raising a shotgun and firing the first shot, and which shot was the one that inflicted the fatal wound. The State's witnesses would show that a general fusillade ensued in which Overcash, appellant, Spurlock and Nichols all engaged.

Appellant in his testimony admits that he and Overcash were sitting on the gallery when Devall came to the feed store, and that when Devall told him about the officers getting busy he remarked that he (Devall) must be next, and that when he saw two men coming towards the feed store he made some remark, either "there comes the d—n rascals now," or the remark Devall says he made; that he thought it was Nichols and Jones who were approaching the store; that he and Overcash did get up and go in the store, and were in the relative positions that the State's witnesses place them. He denies that Spurlock told him he had a warrant for his arrest, but says when the officers approached the store Spurlock reached for his pistol, and Overcash for his shotgun, when the firing began, he stating that Spurlock fired first. He says he had no weapon at that time, but he was wounded in the leg, and fell back in doing so fell against the desk in which the pistol had been placed, and he then got the pistol, but did not shoot. After the difficulty the pistol was found near where appellant was sitting, and he asked the man who found it to put it away and say nothing about finding it. Virtually all the testimony, outside of that of appellant's, would go to show that both a shotgun and pistol were fired out of the house in which Overcash and appellant were situate, but there is a sharp conflict in the testimony as to who fired the first shot, Overcash or the deceased. This, we think, is a sufficient summary of the evidence to discuss the questions raised. There are no bills of exception to the reception or rejection of testimony, the whole attack being on the charge of the court as given.

The criticisms of the charge on murder need not be considered, as appellant was found guilty of only manslaughter, and the definition of manslaughter, if slightly inaccurate, would not be harmful to appellant, unless it conflicts with or infringes on the charge on self-defense, as appellant was given the lowest penalty for manslaughter.

The criticisms of the argument of State's counsel, in the light of the qualifications of the bills by the court, and the instructions given in regard thereto, present no error. The first criticism of the charge relates to the following paragraph of the charge:

"If on the day of the killing of the deceased, the defendant was in the grain house and feed store of W. J. Overcash, that was run in connection with a wagon yard, and was there carrying a pistol on and about his person, then I charge you that he was violating the laws of Texas, for which he was subject to arrest by the sheriff or any deputy sheriff of Throckmorton County, Texas, upon a warrant; and if the deceased, J. G. Spurlock, being the sheriff, and L. W. Nichols, being the deputy sheriff of said county, were informed by any credible person of such violation of the law, if any, by defendant, it became their duty to arrest defendant for such violation of the law, with a warrant, and if the officers were informed that the defendant had unlawfully carried a pistol, they were authorized by law to procure a warrant for the arrest of the defendant for such offense, and if

they did procure a warrant from the justice of the peace of precinct number one of Throckmorton County, Texas, it was their duty under the law to execute the warrant by making the arrest of the defendant, and they were permitted by law to arm themselves for the purpose of overcoming such resistance, if any, as may be offered them by the defendant, or any other person on his behalf, and were further authorized by law to use all reasonable means to effect the arrest. The officers were not authorized by law, however, to use any greater force than was necessary to secure the arrest and detention of the defendant; and what force was necessary to secure the arrest and detention of the defendant, is a question of fact to be determined by the jury from all of the facts and circumstances in evidence in this case."

The criticism of this charge, that it is upon the weight of the evidence is not justified. This was but a statement of a proposition of law, if the jury found a given state of facts. It is also criticized on the ground that there was no evidence in the record that appellant was carrying a pistol on or about his person in the feed store, and presented an issue not made by the testimony. The evidence of Charlie Jones is that when he and appellant were having their trouble, appellant asked Overcash, "Where is my pistol," and then went and got it and fired it. We think this sufficient to authorize the court to charge as he did, but if in error in this, the undisputed facts show that Charlie Jones had filed a complaint against appellant charging him with carrying a pistol at that time; that a warrant was issued and delivered to the deceased sheriff for execution, and he had it in his possession when killed. The evidence would also tend strongly to show that appellant was aware that the officers were coming to arrest him on account of his trouble with Jones. It shows conclusively that appellant was sitting on the front porch of the feed store where he could have seen Jones and the justice of the peace go to the courthouse in a few minutes after his trouble with Jones, and when Devall told him about the officers getting busy up town he remarked, "You must be next," and the conversation that ensued, and the acts of defendant at the time, leads one inevitably to the conclusion that when he saw an officer coming towards the feed store he was aware that it was because of his trouble with Jones and firing the pistol, because he says he thought it was Jones and the deputy sheriff. So under no phase of the case could this paragraph of the charge be said to be injurious or hurtful to appellant. The further criticism that it "was a distinct assumption that he was in fact carrying a pistol" in that it charged the jury that under the circumstances stated it became the duty of the officer to arrest appellant. By reading the charge copied it will be seen that it instructs the jury "if they find that the officers were informed by a credible person of such violation of the law it became their duty to arrest the defendant," and this in accordance with the law of this State, for

Article 479 of the Penal Code makes it the duty of an officer to arrest
one when he is informed by a credible person that such person is
carrying a pistol. (See also Jacobs v. State, 28 Texas Crim. App.,
79; Ex parte Sherwood, 29 Texas Crim. App., 334; Miller v. State,
32 Texas Crim. Rep., 319.) In this case it is proven beyond dispute
that the officers had been informed by Charlie Jones that appellant
was carrying a pistol, and under the law it became their duty to arrest
him, and the court in so instructing the jury committed no error.
But in this case, the evidence goes further and shows that a warrant
had been issued and delivered to the sheriff, consequently under no
circumstances could this paragraph of the court's charge present any
material error.

The court, in his charge, also instructed the jury: "The burden
rests on the State to establish the guilt of the defendant beyond a
reasonable doubt; and if after considering all of the evidence before
you, you have a reasonable doubt of his guilt, you will acquit him;
but if the evidence satisfies your mind beyond a reasonable doubt of
the guilt of the defendant, as charged in the indictment, then you will
convict him and ascertain from the evidence under the charge of the
court, the grade or degree of the offense of which he is guilty and
assess his punishment therefor accordingly.

"You are further instructed that the reasonable doubt also applies
between the different offenses comprised in the charge; so if you find
the defendant guilty, and have a reasonable doubt under the evi-
dence as to what offense he has been guilty of, you will resolve such
doubt in favor of the defendant, and find him guilty of the lesser and
lower offense as between such offenses as you may be in doubt.

"The defendant is presumed to be innocent until his guilt is estab-
lished by legal and competent evidence beyond a reasonable doubt,
and if you have a reasonable doubt as to his guilt you will acquit
the defendant."

Appellant in his motion for new trial copies the paragraph first
above quoted, and says that "it was calculated to make the jury
believe that the court thought there was no reasonable doubt of
appellant's guilt," and cites us to the case of Comegys v. State, 62
Texas Crim. Rep., 231; 137 S. W. Rep., 349. In the Comegys' case
the first paragraph herein given was the only paragraph given on
the doctrine of reasonable doubt, but in this case it is seen that this
paragraph in this case is followed by two other paragraphs, the lat-
ter of which gives the defendant the benefit of the reasonable doubt
in the language of our code. Take these three paragraphs, and when
construed together, we think them a proper presentation of the law,
and instead of depriving defendant of any right, or impressing the
jury with the thought that the court believed defendant guilty, cor-
rectly instructs them that defendant is not only entitled to the benefit
of doubt as to his guilt, but is also entitled to the benefit of doubt as
between degrees of the offense submitted.

The following paragraph of the court's charge is criticized in several paragraphs of the motion for new trial: "If you believe from the evidence that the deceased, J. G. Spurlock, and L. W. Nichols, went to the Overcash wagon yard and feed store to arrest the defendant, A. O. Condron, upon the charge of unlawfully carrying a pistol, and that they were armed with pistols and appeared thus armed before and near the door of said grain store, and that the appearance of officers thus armed, or their attempt to use such weapons, if they did so attempt to use them, or anything then done by said officers, or either of them at the time, either alone, or when taken into consideration with all the other facts and circumstances in evidence in this case, was such as would commonly produce such a degree of anger, rage, sudden resentment or terror, in a person of ordinary temper, under like circumstances with the defendant, as to render the mind incapable of cool reflection; or if you believe from the evidence that the said officers, in attempting to arrest the defendant, were using greater force than was necessary under the circumstances to secure the arrest and detention of the defendant; or that they had time and opportunity to inform him by what authority they were about to arrest him, and having such time and opportunity failed to inform him, and that their manner of attempting such arrest was such as would commonly produce such a degree of anger, rage, sudden resentment or terror, in a person of ordinary temper, under like circumstances with the defendant, as to render the mind incapable of cool reflection, and while under the influence of such sudden passion he participated as a principal offender, if he was such offender, in killing J. G. Spurlock at the time and place charged in the indictment, then you will find the defendant guilty of manslaughter and assess his punishment accordingly at confinement in the penitentiary for not less than two nor more than five years, unless you should find and believe from the evidence that the killing was done in his lawful self-defense under the law as hereinafter given you in this charge, or in the lawful defense of W. J. Overcash.''

This was the paragraph under which appellant was found guilty. In other parts of the charge the court had given a proper definition of manslaughter, but the motion alleges that this paragraph "denies to the defendant the presumption of innocence and benefit of reasonable doubt" in that it requires the jury to believe certain facts. This is proper where the court is instructing the jury under what conditions one may be convicted. Our law requires the jury to find facts affirmatively before they are authorized to convict a person of any offense or degree of an offense, and the doctrine of reasonable doubt need not be appended to each paragraph of the charge if the charge as a whole properly instructs the jury on that issue. We have copied a part of the charge hereinbefore to conclusively demonstrate that the jury were not only told that defendant was entitled to the benefit of a reasonable doubt as to his guilt, but also to the

benefit of doubt as to the degree of offense. In Edens' case, 41 Texas Crim. Rep., 525, this court said: "We think the court's charge wherein he tells the jury 'defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt, and in case of reasonable doubt in your minds as to defendant's guilt you will acquit him and say by your verdict not guilty,' is sufficient application of the law of reasonable doubt to the different phases of the evidence; and it was not incumbent upon the court to attach to each clause of his charge the law of reasonable doubt." For a citation of the cases so holding see Overcash v. State, 67 Texas Crim. Rep., 181, 148; S. W. Rep., 701. On the other hand, in another part of the motion, appellant takes the opposite view of this paragraph and complains that it is error because it authorized the jury to convict "if they believed," etc., and did not tell them they must so believe "beyond a reasonable doubt." In one instance claiming that it took away from the defendant the benefit of "a reasonable doubt," and then claiming that it authorized the jury to convict on a preponderance of the evidence. The charge when read as a whole does neither of these things, and the propositions present no error. However, the court instructed the jury in another part of his charge: "But if the deceased and L. W. Nichols attempted to arrest the defendant, with a warrant in wanton manner, and in doing so used greater force than was necessary in the attempted arrest of the defendant, the use of such greater force than was necessary, if any, was illegal, and the defendant had the lawful right to resist it, and if necessary or apparently necessary in his self-defense, to kill the party or parties engaged in such unlawful attempt to use such unnecessary force, if any was used by them." And appellant insists that these two charges are in conflict, in one instance instructing the jury that if the officers were using greater force than was necessary under the circumstances to effect an arrest, and their manner of attempting such arrest was such as would commonly produce such a degree of anger, rage, sudden resentment or terror, in a person of ordinary temper, as to render the mind incapable of cool reflection (unless you should find and believe from the evidence that the killing was done in his lawful self-defense under the law as hereinafter given you in charge, or in lawful defense of W. J. Overcash), he would be guilty of manslaughter, and in the other instructing them "if the arrest was made in a *wanton manner,* and in doing so used greater force than was necessary, the defendant would be justifiable." The argument being that if the killing took place while the officers were using greater force than was necessary to effect an arrest, this in and of itself alone would justify the homicide. This is not the law. No one is justified in killing another unless it reasonably appears to him from the conduct and acts of the parties that his life is in danger, or he is in danger of serious bodily injury. The court in the latter paragraph tells the jury, if the attempt to arrest was in a wanton

manner and more force was used than was necessary, *and if it was necessary or apparently necessary* to kill in defense of himself, he would be guilty of no offense. We think instead of being in conflict with each other, the charge clearly draws the correct and proper distinction in this character of case. No one, we think, can seriously contend that because an officer in attempting to make an arrest uses more force than is necessary it would justify another in slaying the deceased. He, it is true, if the arrest is unlawful, is authorized to use force to combat force, but his right to kill does not arise until, from the appearances, he thinks his life is in danger, or he is in danger of some serious bodily injury. The right to slay another does not arise solely from the use of "more force than necessary"; it takes more than that, and in connection therewith, from some act or conduct on the part of the officer, it must reasonably appear to a defendant that such officer intends to kill or inflict serious bodily injury. There is no conflict in the two paragraphs of the charge, but correctly draws a line of distinction when the acts of the officer would reduce the offense to manslaughter, and when his acts would justify the killing. This clause occurs where the court is giving definitions of law as to the different issues in the case, and when the court applies the law of self-defense he does so properly, as shown by the paragraphs herein copied. The court in this charge on manslaughter criticized tells the jury that he would be guilty of manslaughter, "unless from the evidence it appeared that the killing was done in lawful self-defense as hereinafter given you in charge," and then instructs them fully as to the circumstances under which appellant would be justified, and guilty of no offense, instructing the jury:

"If you believe from the evidence that W. J. Overcash did kill the deceased at the time and place charged in the indictment and that this defendant, A. O. Condron, participated in such killing, but should further believe from the evidence that at the time W. J. Overcash fired with a shotgun, the first shot fired by him, if you believe that he fired any shot, that the sheriff or his deputy were attempting to use on him or this defendant a deadly weapon, or by some act done by said Spurlock or Nichols, at the time, reasonably indicated to the defendant and created in the mind of the defendant a reasonable expectation or fear that they were, or either of them was, about to make an attack upon the defendant, or upon W. J. Overcash, with a weapon calculated to produce death or serious bodily injury, then it would be presumed from such act that they intended to make use of such weapon to kill the defendant, or said Overcash, or to inflict serious bodily injury upon him or them, and you will in such case if you so believe, acquit the defendant as having acted in self-defense or in defense of another.

"If the acts of Spurlock or Nichols were such as to justify the defendant or W. J. Overcash in killing Spurlock under the law of self-defense, as given you in charge, then neither the defendant nor

Overcash were, under the law, required to retreat in order to avoid the necessity of killing the deceased.

"You are instructed that if the proof shows in this case that W. J. Overcash killed the deceased Spurlock, then before you would be authorized to convict the defendant of any grade of culpable homicide you must find from the evidence beyond a reasonable doubt that the said W. J. Overcash unlawfully killed the deceased Spurlock, and that the defendant was present and knew of the unlawful intent on the part of W. J. Overcash, and so knowing aided him by acts, or encouraged him by words or gestures to kill the said Spurlock, and in that connection you are charged that the mere presence of the defendant in company with said Overcash will not be sufficient to establish the defendant's guilt, but the proof must go further and establish beyond a reasonable doubt that said W. J. Overcash unlawfully killed the deceased, and that the defendant knowing the unlawful intent of the said Overcash to kill said Spurlock, aided and abetted him in said killing, and if you have a reasonable doubt as to the existence of either one of the above propositions, you will acquit the defendant.

"If you believe from the evidence that the deceased Spurlock, and L. W. Nichols, when they appeared in sight of the defendant before the door of W. J. Overcash's grain store, by some act done by them, or either of them, indicated a present purpose and an immediate intention to use upon the defendant, or W. J. Overcash, a weapon which might cause the death of or produce serious bodily injury to either W. J. Overcash or defendant, or if such acts of said Spurlock or Nichols, reasonably so appeared to the defendant at the time, viewed from his standpoint, and said acts of deceased or Nichols at the time were reasonably calculated to create in the mind of the defendant, and did create in his mind a reasonable expectation or fear of death or serious bodily injury, to either W. J. Overcash or defendant, and if you find that then and there, the defendant moved by such reasonable expectation or fear (if he was so moved) of death or serious bodily injury participated in the killing of said Spurlock if he did so in any manner, and you believe that said Overcash killed said Spurlock then the killing was under the law justified as done in his lawful self-defense, or in defense of another, and you will acquit defendant if you so believe even though the danger was not actual, but apparently so; provided the danger reasonably appeared to the defendant, under all of the facts and circumstances at the time, to be real and actual, viewed from the defendant's standpoint.

"If you believe from the evidence under the foregoing charges of the court upon the law of self-defense, that the defendant or Overcash was justified in firing the shot that killed the deceased, Spurlock, if any, then you are instructed that the subsequent shots fired by the defendant or Overcash, if any, are immaterial, and that the defendant had the right to continue to fire so long as danger,

real or apparent, considered from the defendant's standpoint, continued to exist.

"The defendant A. O. Condron cannot be convicted of any offense unless you believe from the evidence beyond a reasonable doubt that W. J. Overcash unlawfully killed J. G. Spurlock in a shooting between W. J. Overcash on the 'one side and Spurlock and Nichols on the other, and if you believe from the evidence that the defendant Condron, did not engage in the shooting between Spurlock and Nichols on the one side and Overcash on the other, nor participate in the acts of W. J. Overcash as a principal offender, if he was such offender, until after he was fired upon or shot by J. G. Spurlock or Nichols, and that he had, or procured a weapon and then fired or attempted to fire at either or both Spurlock or Nichols, he would not be guilty, and if you so believe or have a reasonable doubt thereof, you will acquit the defendant."

These paragraphs present every phase of self-defense as made by the evidence, and in a manner we do not think, when the charge is read as a whole, is subject to any criticism. This is a companion case to that of Overcash v. State, 67 Texas Crim. Rep., 148; S. W. Rep., 701, and all the other questions raised by appellant in his motion for new trial are discussed in that case, and the authorities there cited, and which is here referred to.

Being of the opinion that no reversible error is pointed out in the motion for a new trial, and that the charge fully presents every theory of the case as favorable to defendant as the law authorizes, the judgment is affirmed.

*Affirmed.*

[Rehearing denied April 2, 1913.—Reporter.]

DAVIDSON, Presiding Judge (*dissenting*).—This is the second appeal of this case, the former appeal being reported in 62 Texas Crim. Rep., 485. It is also a companion case to Overcash v. State, 67 Texas Crim. Rep., 148 ∩S. W. Rep., 701.

I deem it unnecessary to make a statement of the facts except as may be incidentally connected with the legal questions discussed. The court gave the following charge:

"If on the day of the killing of the deceased, the defendant was in the grain house and feed store of W. J. Overcash, that was run in connection with a wagon yard, and was there carrying a pistol on and about his person, then I charge you that he was violating the laws of Texas, for which he was subject to arrest by the sheriff or any deputy sheriff of Throckmorton County, Texas, upon a warrant; and if the deceased, J. G. Spurlock, being the sheriff, and L. W. Nichols, being the deputy sheriff of said county, were informed by any credible person or such violation of the law, if any, by defendant, it became their duty to arrest defendant for such violation of the law, with a warrant, and if the officers were informed," etc. The

charge also further instructed the jury that these officers were not authorized by law, however, to use *any greater force than was necessary* to secure the arrest and detention of the defendant, and what force was necessary to secure the arrest and detention of the defendant was a question of fact to be determined by the jury from all of the facts and circumstances in evidence in the case. Several objections were urged to the charge, among others, that it was an assumption of a fact, that is, that portion of the charge which informed the jury that if appellant was carrying a pistol on or about his person at the feed store he would be violating the law, which authorized the deceased sheriff and his deputy to make the arrest, etc. The evidence discloses, as far as I have been able to ascertain from the record, that there had been a difficulty between appellant and Charley Jones a short time before the shooting, which resulted in the homicide of Spurlock; that Jones informed the sheriff's office of that fact, and made an affidavit against appellant for carrying a pistol. The facts in connection with the difficulty between Jones and appellant as detailed by the witnesses Pigg and Barnes and appellant are about as follows: Jones had gone into the grain house of Overcash where appellant was, a quarrel and difficulty ensued, during which appellant reached up and secured out of the coat pocket of Overcash, which was hanging near by, a pistol. This seems to be uncontradicted. Jones' evidence would convey the idea that appellant shot between his feet or into the floor about his feet for the purpose of frightening him. About the time that appellant obtained the pistol from the pocket of Overcash's coat, Overcash came upon the scene and undertook to take the pistol from appellant, and while they were scuffling over it it was accidentally discharged, the ball entering the floor near where Jones was standing. All the witnesses agree that Overcash took the pistol from appellant, broke it and dropped the shells from it and immediately locked it in his (Overcash's) desk. Jones went away and made the affidavit against appellant for carrying a pistol. The facts stated do not constitute carrying a pistol on and about the person of appellant. When the difficulty between himself and Jones occurred he reached up in the pocket of Overcash's coat and got the pistol, which Overcash undertook to take away from him, when it was accidentally discharged. This does not constitute carrying a pistol, and the court was in error in so instructing the jury and authorizing them to so find or believe. The court by this charge assumed and charged upon a phase of the case not justified by the facts, and, of course, detrimentally to appellant before the jury. It assumed or authorized the jury to assume a fact which was not a fact and not supported by the evidence.

There is another phase of this matter that ought to be noticed. The court having given the charge above quoted and criticized, failed to give the converse of the proposition, that is, if appellant did not carry the pistol, then the jury was not authorized so to find. If he did not

carry the pistol he was not violating the pistol law, as the court instructed the jury he was doing by carrying it. The charge does not relieve the case of the assumption of the fact that appellant was carrying a pistol. The charge was on the weight of evidence by putting it to the jury as it did, authorizing them to believe he was carrying the pistol, in the first instance, and in not giving the converse of the proposition after having given the charge given. The jury is not authorized to believe nor the court to charge the jury that they might believe a fact against an accused when the facts and circumstances in evidence do not justify or raise it. It was the assumption of a damaging fact against the accused not in evidence, and placed him in the attitude of being a violator of the law and a wrongdoer. He may have violated the law in shooting at the man's feet, if he did shoot at his feet or between them, or in front of him, but that charge was not given by the court.

The court charged the jury as follows: "If you believe from the evidence that the deceased, J. G. Spurlock, and L. W. Nichols, went to the Overcash wagon yard and feed store to arrest the defendant, A. O. Condron, upon the charge of unlawfully carrying a pistol, and that they were armed with pistols and appeared thus armed before and near the door of said grain store, and that the appearance of the officers thus armed, or their attempt to use such weapons, if they did so attempt to use them, or anything then done by said officers, or either of them at the time, either alone, or when taken into consideration with all the other facts and circumstances in evidence in this case, was such as would commonly produce such a degree of anger, rage, sudden resentment or terror, in a person of ordinary temper, under like circumstances with the defendant, as to render the mind incapable of cool reflection; or if you believe from the evidence that the said officers, in attempting to arrest the defendant, were using greater force than was necessary under the circumstances to secure the arrest and detention of the defendant; or that they had time and opportunity to inform him by what authority they were about to arrest him, and having such time and opportunity failed to inform him, and that their manner of attempting such arrest was such as would commonly produce such a degree of anger, rage, sudden resentment or terror, in a person of ordinary temper, under like circumstances with the defendant, as to render the mind incapable of cool reflection, and while under the influence of such sudden passion he participated as a principal offender, if he was such offender, in killing J. G. Spurlock at the time and place charged in the indictment, then you will find the defendant guilty of manslaughter and assess his punishment accordingly at confinement in the penitentiary for not less than two nor more than five years."

Various objections were urged to this charge. I deem it unnecessary to recapitulate them. Before mentioning the criticisms of the above charge, which is No. 18 in the general charge, I desire to notice

another phase of the court's charge, subdivision 13, which is as follows: "But if the deceased and L. W. Nichols attempted to arrest the defendant, with a warrant in wanton manner, and in doing so used greater force than was necessary in the attempted arrest of the defendant, the use of such greater force than was necessary, if any, was illegal, and the defendant had the lawful right to resist it, and if necessary or apparently necessary in his self-defense, to kill the party or parties engaged in such unlawful attempt to use such unnecessary force, if any was used by them."

These charges are incompatible and in conflict. In one of the charges the jury is instructed that if the parties undertook to arrest in a wanton and unjustifiable manner, *using greater force than was necessary,* the defendant had the right to resist, and would be justified in killing. In the other charge the jury is instructed that if the sheriff undertook to arrest and *used greater force than was necessary,* and without giving the party notice of his purpose to arrest, etc., and *used greater force than was necessary,* he, the defendant, nevertheless, would be guilty of manslaughter. So it is observable that under one charge defendant would be justified in resisting, even to killing. Under the other he would not be justified, but would be guilty of manslaughter. These charges are confusing, and to say the least of it, contradictory. Wherever charges on the same subject are thus contradictory, objections to them are well taken and the error is reversible. As I understand this record, the greater force that was used by the officers was shooting at Overcash and appellant, during which they shot appellant and wounded him. The law with reference to the use of greater force does not belong under such state of facts. If the officers in approaching the two defendants began firing upon them, the question of greater force is not an issue in the case, and this limitation upon the right of self-defense was unjustifiable, and yet the jury is instructed that under this condition in one charge they could convict of manslaughter, and under the other they could acquit on the theory of justification.

Section 28 of the charge reads thus: "The burden rests on the State to establish the guilt of the defendant beyond a reasonable doubt; and if after considering all of the evidence before you, you have a reasonable doubt of his guilt, you will acquit him; but if the evidence satisfies your mind beyond a reasonable doubt of the guilt of the defendant as charged in the indictment, then you will convict him and ascertain from the evidence under the charge of the court, the grade or degree of the offense of which he is guilty and assess his punishment therefor accordingly." This charge is held to be error in Comegys v. State, 62 Texas Crim. Rep., 235. The Comegys' case lays down the correct and well settled rule. Appellant had the right to have reasonable doubt and presumption of innocence presented to the jury untrammeled by such qualification. That the State's side of the case may and should be appropriately submitted

to the jury is the law of the land, but it is equally the law that the defendant shall have his side of the law, that is, such phases of the law as guarantee his legal rights, given untrammeled by qualifications that cut him off from the benefit of such law.

There is another contention urged by appellant, to-wit: That in section 20 of the charge the court shifts the burden, or rather places it on defendant to show the deceased was attacking him or about to do so at the time of the killing. This was given as a basis for a further charge of the court to the effect that if the officers were armed at the time of the diculty, the law would presume they intended to kill or inflict serious bodily injury. This charge as given was error in my judgment. That the officers were armed was undisputed, for they began shooting and continued shooting until Spurlock was killed and defendant was shot down. The legal presumption that the officers intended to kill by the use of the means used by them should not have been curtailed as it was by the court in his charge. I deem it unnecessary to go further with this matter.

Believing as I do, under the unbroken line of authorities and the settled law in Texas, that appellant has not been tried according to law, and has been deprived of those rights guaranteed under statutory enactments in this State, I enter the above why I cannot agree with this affirmance. I therefore must respectfully enter my dissent.